James W. WHEELER, Petitioner-Appellant,

v.

UNITED STATES of America, Respondent-Appellee.

No. 79–2696.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 5, 1980.

Decided April 3, 1981.

---

Daniel Hoyt Smith, Smith, Kaplan & Withey, Seattle, Wash., for petitioner-appellant.

James R. Moore, Asst. U. S. Atty., Tacoma, Wash., for respondent-appellee.

Before VAN DUSEN,* ANDERSON and BOOCHEVER, Circuit Judges.

VAN DUSEN, Senior Circuit Judge.

In 1974, petitioner Wheeler was convicted of bank robbery and sentenced to 20 years' imprisonment by the district court of the Western District of Washington. Two weeks after sentencing, Judge William N. Goodwin, the trial judge, issued an order directing Wheeler's custodian to prevent Wheeler from communicating with ten named individuals. The judge entered the order without prior notice to Wheeler and without a hearing at which Wheeler was either present or represented.

After Judge Goodwin's death, Wheeler filed this petition pursuant to 28 U.S.C. § 2255 to vacate the post-sentencing order. The district court dismissed the petition. We reverse the district court's order of dismissal and remand to the district court for further proceedings consistent with this opinion.

## FACTS [1]

Petitioner Wheeler was convicted of bank robbery after a trial and sentenced to 20 years' imprisonment. During the trial Wheeler admittedly attempted to persuade Donna Joiner to testify in his behalf.[2] The allegedly harassing tactics used by Wheeler to persuade Ms. Joiner included several attempts to expose to her family and military superiors certain information that discredit-

ed her. Because Wheeler continued in his harassment of Ms. Joiner after the trial was over, she requested protection from the court. On January 6, 1975, approximately two weeks after Wheeler's sentencing, the court ordered "that the Attorney General or his authorized representative duly acting as the custodian of James William Wheeler shall not permit James William Wheeler to telephone or to write to the following individuals: . . . ." Ten individuals were listed, including relatives of Ms. Joiner and several of her commanding officers. Petitioner was not provided notice that Ms. Joiner was seeking the court's protection, was not present when the court issued the order, and was not formally notified of the order within a reasonable time after it was issued.[3] Apparently, Wheeler was first formally notified of the order in March 1979, over four years after it was issued.

Wheeler filed this petition to vacate the order under 28 U.S.C. § 2255 on June 12, 1979, approximately three months after receiving such formal notification. At the time of filing, Wheeler was incarcerated at the Federal Correctional Institution at Lompoc, California. Wheeler has since been moved to the United States Penitentiary, Leavenworth, Kansas, where he is currently imprisoned.

The district court referred Wheeler's petition to a magistrate who recommended that the petition be denied. The magistrate found: the trial court has the inherent power to protect witnesses; the protection of witnesses is an important and substantial

---

1. Because the district court did not have a hearing to develop the facts behind petitioner's charges, these facts are sketchy at best and speculative at worst. This lack of facts requires us to remand. See discussion below. Much of what is reported in this section is based on the briefs and is not supported by evidence in the record.

2. According to the trial judge, Wheeler was trying to force Donna Joiner to commit perjury.

3. Petitioner Wheeler, however, does not argue that he was unaware of the order. It is quite likely he knew of the order, as its entry was recorded on the docket sheet. Petitioner appealed his conviction and probably saw the entry on the docket sheet. Petitioner claims that he never contested the order before because "it was never a problem until now" (Motion under § 2255 at par. 13 (p. 3 of excerpt from record, called Opening Brief of Appellant—hereinafter "Excerpt")).

governmental interest; and this substantial governmental interest justified the restrictions placed on Wheeler's mailing privileges under the authority of *Procunier v. Martinez*, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974) (Excerpt, p. 9). The district court adopted the magistrate's recommendation and ordered the dismissal of the petition under 28 U.S.C. § 2255 on July 26, 1979 (Excerpt, p. 7).

## JURISDICTION

■ We raise, as we must, the question of the district court's jurisdiction to pass on the merits of Wheeler's petition.[4] The district court, we assume, asserted jurisdiction under 28 U.S.C. § 2255, which provides in part:

"A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, ... or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence."

Wheeler filed his § 2255 petition in the District Court for the Western District of Washington, the court in which he was tried and sentenced.

Wheeler's petition, however, does not attack the sentence imposed;[5] rather, the petition attacks the post-sentencing order restricting his mail privileges. The contested order, unlike a sentence, was not issued on a judgment of sentence form, was not a result of petitioner's conviction for bank robbery, and was issued two weeks after petitioner was sentenced to 20 years' imprisonment. Nevertheless, the effect of the order has been to impose an additional restriction on Wheeler while serving his sentence.

The Supreme Court in *United States v. Hayman*, 342 U.S. 205, 210–19, 72 S.Ct. 263, 267–72, 96 L.Ed. 232 (1952), discusses at some length the practical reasons why different types of cases should be heard in different districts. A district court that happened to be located where there was a federal penitentiary with thousands of prisoners would be overwhelmed with habeas petitions, while other districts would get none. Section 2255 evens the load among the district courts. Also, the type of actions that may be brought under § 2255 would ordinarily be of the type that would require the presence of witnesses and old records that would be located where the petitioner was tried and sentenced; not where the petitioner is confined.

This case is something of a hybrid. Wheeler is challenging actions of the warden, which would seem to bring it within § 2241 (see notes 6 and 7), yet the warden's action is being imposed by an order of the sentencing court in Washington. Because the events that led up to the judge's order took place in Washington, a remand there, where the records and witnesses would be more available, is in conformity with the purposes Congress had in enacting § 2255. While the order is not, strictly speaking, a sentence, its effect is to add an additional condition to Wheeler's sentence. We hold that, for the purposes of § 2255, the order should be considered as the equivalent of a sentence.

■ Before concluding that jurisdiction under § 2255 was proper, we considered several alternative means by which Wheeler could obtain federal judicial review of the contested order. The Government contends Wheeler's complaint should be filed in the Kansas district court pursuant to 28 U.S.C.

---

4. *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062 (9th Cir. 1979); *O'Donnel v. Wien Air Alaska, Inc.*, 551 F.2d 1141 (9th Cir. 1977).

5. Section 2255 petitions are limited to those claims arising from the imposition of a sentence. *United States v. Hayman*, 342 U.S. 205, 210–19, 72 S.Ct. 263, 267–72, 96 L.Ed. 232 (1952); *Brown v. United States*, 610 F.2d 672 (9th Cir. 1980); *Wright v. U. S. Bd. of Parole*, 557 F.2d 74 (6th Cir. 1977); *Andrino v. U. S. Bd. of Parole*, 550 F.2d 519 (9th Cir. 1977); *United States v. Huss*, 520 F.2d 598 (2d Cir.

§ 2241.[6] Wheeler proposes that his petition should be addressed by the Washington district court as either a 28 U.S.C. § 2241 petition,[7] a *Bivens*-type action filed pursuant to 28 U.S.C. § 1331,[8] or a writ of mandamus.[9] For the reasons set out in notes

1975); *Ridenour v. United States*, 446 F.2d 57 (9th Cir. 1971).

**6.** Generally, a petitioner who wishes to contest conditions of incarceration does so by filing a petition pursuant to 28 U.S.C. § 2241 in the district in which he is incarcerated. *Brown v. United States*, 610 F.2d 672 (9th Cir. 1980); *Andrino v. U. S. Bd. of Parole*, 550 F.2d 519 (9th Cir. 1977); *Blau v. United States*, 566 F.2d 526 (5th Cir. 1978). Two problems could confront Wheeler if he filed a petition in the Kansas district court. First, the Kansas district court might refuse to assert jurisdiction on the ground that it is without power to grant the relief requested, *i. e.*, vacation of an order issued by another federal court. Second, if the Kansas district court did assert jurisdiction and Wheeler prevailed, the only remedy available would be an order directing the warden to disregard the order of the district court of the Western District of Washington. This order would put the warden in the unenviable, and undesirable, position of having to disobey one of the two courts' orders.

**7.** As explained in note 6, § 2241 petitions generally must be filed in the district within which the prisoner is incarcerated. This general rule arises from the court's need to assert *in personam* jurisdiction over the respondent (but not the petitioner). *Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 494–95, 93 S.Ct. 1123, 1129–30, 35 L.Ed.2d 443 (1973). Arguably, by relying on *Braden*, the district court could assert jurisdiction over a § 2241 petition even though Wheeler is presently imprisoned in Kansas. In *Braden, supra* at 497–99, 93 S.Ct. at 1130–32, the Court said:

"Where American citizens confined overseas (and thus outside the territory of any district court) have sought relief in habeas corpus, we have held, if only implicitly, that the petitioners' absence from the district does not present a jurisdictional obstacle to the consideration of the claim. [Citing cases.]

"A further, critical development since our decision in *Ahrens* [335 U.S. 188, 68 S.Ct. 1443, 92 L.Ed. 1898] is the emergence of new classes of prisoners who are able to petition for habeas corpus because of the adoption of a more expansive definition of the 'custody' requirement of the habeas statute. [Citing cases.] The overruling of *McNally v. Hill*, 293 U.S. 131 [55 S.Ct. 24, 79 L.Ed. 238] (1934), made it possible for prisoners in custody under one sentence to attack a sentence which they had not yet begun to serve. And it also enabled a petitioner held in one State to attack a detainer lodged against him by another State. In such a case, the State holding the prisoner in immediate confinement acts as agent for the demanding State, and the custodian State is presumably indifferent to the resolution of prisoner's attack on the detainer. Here, for example, the petitioner is confined in Alabama, but his dispute is with the Commonwealth of Kentucky, not the State of Alabama. Under these circumstances it would serve no useful purpose to apply the *Ahrens* rule and require that the action be brought in Alabama. In fact, a slavish application of the rule would jar with the very purpose underlying the addition of the phrase, 'within their respective jurisdictions.'"

(Footnote omitted.)

The court would still need a respondent over whom it could assert jurisdiction, however. See notes 8 and 9.

**8.** The *Bivens* action, recognizable by the district courts under the jurisdiction granted in 28 U.S.C. § 1331, has traditionally provided a means of obtaining damages, not injunctions. Although petitioner no longer needs to fulfill a minimum damages requirement, see P.L. 96–486, 49 U.S.L.W. 1107, it is unlikely he would be able to name an appropriate defendant since trial judges have immunity except in extraordinary circumstances. *Cf.* 28 U.S.C. § 1651.

**9.** This court has the authority to issue a writ of mandamus under 28 U.S.C. § 1651. Consideration of five factors determines whether we will exercise our discretion to issue a writ. They are:

"1) The party seeking the writ has no other adequate means, such as a direct appeal, to attain the relief he or she desires, 2) the petitioner will be damaged or prejudiced in a way not correctable on appeal, 3) the district court's order is clearly erroneous as a matter of law, 4) the district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules, and 5) the district court's order raises new and important problems, or issues of first impression.

"*Bauman v. United States District Court*, 557 F.2d 650, 654–55 (9th Cir. 1977) (citations omitted)."

*United States v. Sherman*, 581 F.2d 1358, 1361 (9th Cir. 1978).

Factors 1, 2, and 5 suggest that mandamus is appropriate. We refrain from granting mandamus primarily because of factor 3. The factual record was never developed below and we, therefore, cannot be certain that circumstances existed which justified or did not justify the issuance of the order. *See* LEGAL ANALYSIS, *infra*. Also, the supervisory power we do rely on is more appropriately used to resolve the problem in this federal criminal case.

6–9, none of these methods of obtaining review is appropriate in this case.

The reason none of the suggested approaches offers the appropriate means of review lies in the extremely unusual and highly irregular nature of the order itself and the circumstances of its issuance. Neither the parties nor this court has been able to unearth any substantially similar case.[10] Assuming the facts as alleged are true,[11] the trial judge issued the order, not before or during trial, but after sentencing Wheeler. Generally, the trial judge has no authority over the defendant once sentence has been entered. *See United States v. Huss*, 520 F.2d 598 (2d Cir. 1975) (power of sentencing court after sentence entered is limited to those areas expressly provided by Congress). Furthermore, by entering the order after sentencing, the trial judge interfered with the executive branch's province of prison administration in violation of the separation of powers principle. See *Procunier v. Martinez*, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), discussed *infra* at part II. Assuming the facts as alleged are true, prior to the entry of the order restricting Wheeler's fundamental and highly protected First Amendment rights, Wheeler should have been provided with notice and an opportunity to be heard. In almost every instance where First Amendment rights are to be restricted, notice and a hearing must be provided to the one whose rights are to be limited. *Carroll v. Princess Anne*, 393 U.S. 175, 180, 89 S.Ct. 347, 351, 21 L.Ed.2d 325 (1968), discussed *infra* at part I. Here, Wheeler not only had no prior notice, he never received formal notification even after the order was issued.[12] This failure to

notify precluded Wheeler from appealing the order. As the facts stand before us, it appears that Wheeler received his first formal notice of the order on or about March 21, 1979, over four years after it was issued. Conceivably, because the order was directed to the warden, and not Wheeler, the warden could have been opening and inspecting Wheeler's mail for four years without Wheeler's knowledge.

Congress, not surprisingly, did not contemplate such an extraordinary set of circumstances when it considered what judicial decisions were to be subject to collateral attack. In light of the broad powers granted the district courts by the Federal Rules, habeas corpus statutes, and other jurisdictional legislation, we conclude that Congress did not intend to preclude collateral attack on an order such as the one presented here. This conclusion is especially justified where, as here, petitioner could not have appealed the order if he was never notified of it. To strictly and literally apply the jurisdiction-granting statutes so as to withhold jurisdiction from the district court "is so shocking to the sense of justice that ... it is the duty of the court to [refuse the strict application of the statute] in the interest of the Government itself, to protect it from the [possible] illegal conduct of its officers and preserve the purity of its courts ...." *Sorrells v. United States*, 287 U.S. 435, 449, 53 S.Ct. 210, 215, 77 L.Ed. 413 (1932).

The Supreme Court, in *McNabb v. United States*, 318 U.S. 332, 340, 63 S.Ct. 608, 612, 87 L.Ed. 819 (1943), imposed on the courts of appeals the power and the duty of "establishing and maintaining civilized stan-

---

10. *Cf. Intersimone v. Carlson*, Civil No. 80–0410 (M.D.Pa. Dec. 29, 1980), discussed in part II, *infra*.

11. In *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), the United States Supreme Court explained:

"When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it

may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test. Moreover, it is well established that, in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader."

12. Whether Wheeler had actual notice of the order is not clear, although it is possible he did hear of it.

dards of procedure ...." *Id.* at 340, 63 S.Ct. at 613. *United States v. Guido,* 597 F.2d 194, 198 (9th Cir. 1979); *United States v. Hammond,* 605 F.2d 862, 864 (5th Cir. 1979); *United States v. Premises Known as 608 Taylor Ave.,* 584 F.2d 1297, 1305 (3d Cir. 1978) (Rosenn, J., concurring). This supervisory power has been used to afford relief where constitutional rights have been callously disregarded, *United States v. Premises Known as 608 Taylor Ave., supra* at 1305, and where governmental conduct has adversely affected the integrity of the judicial process. *United States v. Hammond, supra* at 864. We find the exercise of the power appropriate here.[13] Of the jurisdictional statutes considered, § 2255 provides the most appropriate means by which Wheeler can obtain federal judicial review. For this reason, we have held at page 5 above that the district court properly asserted jurisdiction over Wheeler's petition pursuant to 28 U.S.C. § 2255. Alternatively, we rely on our supervisory powers described above and direct that the district court assert its jurisdiction to hear Wheeler's petition.

To conclude, we hold the district court had jurisdiction over Wheeler's complaint under 28 U.S.C. § 2255 or, alternatively, pursuant to this court's supervisory powers as required in *McNabb v. United States, supra.*

## LEGAL ANALYSIS

Our analysis of the legal issues raised by petitioner Wheeler is limited by the paucity of facts in the record. Although we discuss the pertinent law below, we conclude that we cannot resolve any of the legal issues presented. The case, therefore, will be remanded to the district court with instructions to develop the facts and resolve the issues in light of this opinion.

**13.** Also, we note that Congress has given the federal courts power to consider any written motion in Rule 47 of the Federal Rules of Criminal Procedure.

**14.** We note that this court, under its supervisory powers, has the "duty of establishing and maintaining civilized standards of procedure

### 1. *The Fifth Amendment, Due Process Claim*

Wheeler challenges the constitutionality of the initial order on Fifth Amendment, due process grounds. Admittedly, Wheeler was not notified that the judge was considering restricting Wheeler's correspondence rights, nor was Wheeler or his representative present at the hearing, if any, when the judge issued the order.

In cases where the court has exercised its inherent power to protect witnesses, a hearing was required. *United States v. Kirk,* 534 F.2d 1262 (8th Cir. 1976) (hearing required before court could deny bail to defendant who had threatened a witness); *United States v. Wind,* 527 F.2d 672 (6th Cir. 1975) (same). A hearing was also required where the court restricted a plaintiff's First Amendment rights in order to protect defendant's right to a fair trial. *In re Halkin,* 598 F.2d 176 (D.C.Cir.1979).

■ In the present case, the court's order, issued *ex parte* with no notice to Wheeler, restricted his First Amendment right to correspond. The Supreme Court has stated:

"[T]here is no place within the area of basic freedoms guaranteed by the First Amendment for such [*ex parte*] orders where no showing is made that it is impossible to serve or to notify the opposing parties and to give them an opportunity to participate."

*Carroll v. Princess Anne,* 393 U.S. 175, 180, 89 S.Ct. 347, 351, 21 L.Ed.2d 325 (1968). Unless the circumstances were unusually compelling, the trial court should have held a hearing, with prior notice to Wheeler, before it issued the order.[14]

On remand, the initial order will be vacated by the district court unless the Government can show there was an emergency justifying its entry. We refrain

and evidence" in the federal courts. *McNabb v. United States,* 318 U.S. 332, 340, 63 S.Ct. 608, 613, 87 L.Ed. 819 (1943). *See United States v. Guido,* 597 F.2d 194 (9th Cir. 1979). We exercise our supervisory powers to require a hearing under these particular circumstances.

from vacating the order ourselves because of the lack of a developed record and the presumption in favor of the legality of official action, whether judicial or not. *Goldblatt v. Hempstead*, 369 U.S. 590, 594, 596, 82 S.Ct. 987, 990, 991, 8 L.Ed.2d 130 (1962).

If the facts as developed on remand reveal that an emergency existed and Wheeler's due process rights were not violated, the district court would have to address the merits of the complaint. It would appear that the propriety of issuing the order approximately six years ago is no longer of concern. What is important now is the validity of the order at this time. The district court, if it addresses the merits, must consider the necessity and validity of the order six years after it was issued. We briefly discuss the merits of petitioner's complaint in the event the district court does not dissolve the order as invalid because issued in violation of Wheeler's right to due process.

II. *Scope of Court's Inherent Power · to Protect Witnesses and Insure the Proper Administration of Justice*

The district court upheld the order restricting Wheeler's mail privileges in the belief that the trial court's inherent need to protect witnesses justified the restrictions imposed on petitioner. Wheeler claims the trial court exceeded the bounds of its inherent, but limited, power to protect witnesses in two ways. First, he contends the court's inherent power to protect witnesses is limited to use only before or during trial, not after the trial is over. Because the order was issued after sentencing, Wheeler maintains that it is invalid. Second, he argues that the court exceeded its authority because it interfered with the executive branch's domain of prison administration without a showing of a constitutional violation as required in *Procunier v. Martinez*, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974). We reject petitioner's first contention in part and second contention in full.

◼ First, we conclude that, in certain unusual circumstances, a trial court can issue a post-trial order to protect a witness.

We recognize that a court has the inherent power to protect witnesses. *United States v. Cozzetti*, 441 F.2d 344 (9th Cir. 1971); *Carbo v. United States*, 288 F.2d 282 (9th Cir. 1961); *United States v. Kirk*, 534 F.2d 1262 (8th Cir. 1976); *United States v. Wind*, 527 F.2d 672 (6th Cir. 1975). This inherent power to protect witnesses stems from the "indisputably ... broad powers [of the trial judge] to ensure the orderly and expeditious progress of a trial." *Bitter v. United States*, 389 U.S. 15, 16, 88 S.Ct. 6, 7, 19 L.Ed.2d 15 (1976). More generally stated, the trial judge has the broad discretion to protect the administration of justice from "abuses, oppression and injustice." *Id.* at 16, 88 S.Ct. at 7 *Wood v. Georgia*, 370 U.S. 375, 383, 82 S.Ct. 1364, 1369, 8 L.Ed.2d 569 (1962); *Gumbel v. Pitkin*, 124 U.S. 131, 143, 8 S.Ct. 379, 383, 31 L.Ed. 374 (1888). Courts have exercised the power to protect witnesses by refusing to release a defendant on bail both during the trial, *Bitter v. United States, supra; United States v. Kirk, supra; United States v. Cozzetti, supra; Carbo v. United States, supra,* and at the pretrial stage, *United States v. Wind, supra.*

◼ In the present case, the court issued a protective order not before or during the trial but rather after the trial had ended. The Government has cited no case in which a court has taken steps to protect a witness once the trial has been completed and we have been unable to find even one such case. Because this is a post-trial order, it cannot promote "the orderly and expeditious progress of a trial." *Bitter v. United States*, 389 U.S. at 16, 88 S.Ct. at 7. It could, however, promote the more general purpose of protecting the administration of justice from "abuses, oppression and injustice." *Id.* at 16, 88 S.Ct. at 7. By protecting the witness after the trial, the court is encouraging that witness, and other potential witnesses, to come forward and provide information helpful to the implementation of justice.

The trial court's inherent power to protect the sound administration of justice has provided the basis for orders issued to protect jurors after the trial has ended. *King*

*v. United States*, 576 F.2d 432 (2d Cir. 1978) (court upheld order requiring jurors to report to FBI if anyone questioned them); *Bryson v. United States*, 238 F.2d 657 (9th Cir. 1956) (order prohibiting defendant from communicating with jurors upheld). *Cf. United States v. Sherman*, 581 F.2d 1358 (9th Cir. 1978) (order that no one, including newsmen, speak with jurors struck down as unjustified because no showing that jurors would be harassed). It is possible, in a particular situation, that a trial court would be warranted in issuing an order to protect a witness, like a juror, even though the trial was over.

The Supreme Court has stated that the court's inherent power to promote the administration of justice must be exercised "with circumspection . . . [and] only when . . . defendant's conduct presents . . . significant interference with the [administration of justice]."[15]  *Bitter v. United States*, 389 U.S. at 16, 88 S.Ct. at 7. This circuit has also demonstrated an attitude of caution in this area. In considering an order prohibiting jurors from speaking with anyone, including newsmen, the Ninth Circuit panel in *United States v. Sherman, supra* at 1361, stated that

> "[t]he government in order to sustain the order must show that the activity restrained poses a clear and present danger or a serious and imminent threat to a protected competing interest. *Wood v. Georgia*, 370 U.S. 375, 82 S.Ct. 1364, 8 L.Ed.2d 569 (1962); the restraint must be narrowly drawn and no reasonable alternatives, having a lesser impact on First Amendment freedoms, must be available, *Carroll v. President and Commissioners of Princess Anne*, 393 U.S. 175, 89 S.Ct. 347, 21 L.Ed.2d 325 (1968); *Shelton v. Tucker*, 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960)."

In *Sherman*, the court held that the protective order failed to satisfy either part of the test.

The Government, to sustain the order on remand, must demonstrate that the contested order satisfies the two-part test set out in *Sherman*. To meet part one of the test, Wheeler's communication with the ten named individuals must be found to pose a clear and present danger to the witness. As to the second prong of the test, available alternatives, we bring to the district court's attention a similar case, *Intersimone v. Carlson*, Civil No. 80–0410 (M.D.Pa. Dec. 29, 1980). In *Intersimone*, the court ordered defendant not to communicate or harass the jurors. Despite the order, defendant continued to attempt to communicate with the jurors. The court charged the defendant with contempt, held a hearing, found defendant in contempt, and sentenced him.[16]  Still, defendant persisted in his attempt to harass and communicate with his jurors. At this point the judge wrote a letter (not an order) to the prison authorities, requesting that they take the necessary precautions to insure that defendant did not communicate with the named jurors.[17]  The United States District Court for the Middle District of Pennsylvania, on petition from defendant contesting the inspection of his mail by prison

---

**15.** We realize that we have substituted "administration of justice" for "progress or order of the trial." The need for this substitution again indicates that post-trial orders to protect witnesses are extraordinary in character and to be issued only in rare instances. At the least, the conduct of future judicial and administrative (*e. g.*, parole) proceedings and the independence of future witnesses could be affected by the alleged threats to witnesses.

**16.** The contempt proceeding was apparently based on 18 U.S.C. § 401:

> "A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—

> "(1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice; . . . . "

**17.** The court appears to be the appropriate governmental authority to request the warden to exercise his supervisory powers under 28 C.F.R. § 540.13(d) in order to protect a trial witness. It is worthy of note that before placing an inmate on a restricted correspondence list, the warden must follow certain notice and hearing procedures to accord the prisoner his due process rights. 28 C.F.R. § 540.14(c). We do not need to reach the issue of whether a member of the public who has been or may be a witness in a trial involving the defendant can invoke the warden's supervisory powers under 28 C.F.R. § 540.13(d).

authorities, held that, under the circumstances, the "prison officials had a legitimate purpose for restricting [defendant's] general correspondence." *Id.* at ——. The district court recognized that the prison authorities could prohibit the defendant from corresponding with his jurors by enforcing a negative mailing list. The court orders, contempt citations and sanctions, and requests to prison authorities used in *Intersimone* are some of the less disruptive means the trial judge could have used to protect the witness, Ms. Joiner.

Because we do not know the facts surrounding the issuance of the January 1975 order, we are unable to determine if the trial court issued the order in compliance with the test set out in *Sherman*, in which case it did not exceed its inherent power. If necessary, the district court will make this determination on remand.

▇▇▇ Second, we reject Wheeler's argument that the court exceeded its inherent power in issuing an order which interferes with the executive branch's domain of prison administration where there was no constitutional violation shown. The contested judicial order directs the Attorney General or other custodian to restrict Wheeler's mail privileges. Attorneys General and prison officials are members of the executive branch. The management of the federal prisons lies within the province of the executive branch and is delegated to the Attorney General. *Procunier v. Martinez*, 416 U.S. 396, 404–05, 94 S.Ct. 1800, 1807, 40 L.Ed.2d 224 (1974); *United States v. Huss*, 520 F.2d 598, 602 (2d Cir. 1975); 18 U.S.C. § 4001 (1976). Only where a prison regulation or practice offends a fundamental constitutional right may a court interfere in this executive domain of prison administration. *Procunier v. Martinez*, 416 U.S. at 405, 94 S.Ct. at 1807.

In the present situation, unlike that in *Procunier, supra,* the Government need not demonstrate an infringement on someone's fundamental constitutional rights. In *Procunier*, the Court recognized the respect due the prison authority's need to maintain security and held that prison regulations would be sustained unless they infringed on a fundamental constitutional right. *Procunier v. Martinez*, 414 U.S. at 405, 94 S.Ct. at 1807. In the present case, it is the court's order like the prison regulation, that must be given due respect and upheld unless it infringes on someone's fundamental constitutional rights. The burden is on petitioner, not the Government, to demonstrate a constitutional violation.

### III. *First Amendment Concerns*

Wheeler further challenges the order as an unconstitutional limitation on his First Amendment right to free speech. Wheeler's challenge requires that we balance his First Amendment right to correspond against the court's need to promote the fair administration of justice and to protect witnesses.[18] We have found no case in which a court has balanced these two particular interests. Perhaps the most similar balancing process was carried out in *Procunier v. Martinez, supra.*[19] The balancing in *Procunier* was between a prisoner's First Amendment right to correspond and the prison officials' need to maintain security. The Court in *Procunier* held that a prison regulation or practice must be approved if (1) it furthered an important or substantial governmental interest unrelated to the suppression of expression, and (2) it limited the prisoner's First Amendment freedoms no more than necessary or essential to protect the governmental interest. *Id.* at 413, 94 S.Ct. at 1811. The governmental interests in *Procunier* consisted of the prison authority's

**18.** A third element which may also have to be considered is the prison authority's need to maintain security. This factor is apparently not present here.

**19.** In *In re Halkin*, 598 F.2d 176 (D.C.Cir.1979), the court balanced plaintiff's First Amendment rights to publish information obtained through discovery against defendant's right to a fair trial. The court found in favor of defendant

and upheld an order preventing plaintiff from publishing the material. This was a civil, not a criminal, case in which the First Amendment right was balanced against the defendant's right to a fair trial, not the court's inherent power to protect the judicial process. The test for determining the validity of the court's order in *Halkin*, however, is quite similar to that used in *Procunier*. *Id.* at 191.

need to manage the prison efficiently and to maintain security. Despite these substantial governmental interests, the Court invalidated as unnecessarily broad the California prison regulations which, among other things, permitted prison authorities to inspect all letters and confiscate those which contained "complaints, . . . grievances, . . . inflammatory political, racial, religious or other beliefs [or] were lewd, obscene or defamatory . . . or are otherwise inappropriate." *Id.* at 399–400, 94 S.Ct. at 1804–05. Since *Procunier,* the Supreme Court has upheld prison regulations that permitted detainees to receive only that published material which was sent by a publisher or book club. *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Regulations permitting the inspection of mail from a prisoner's attorney in the presence of the prisoner have also been upheld. *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

The test announced in *Procunier* is appropriately applied to the presently contested order to determine its validity in light of First Amendment constraints.[20] The court's interest in furthering the orderly administration of justice by protecting witnesses is a substantial interest. *United States v. Bitter, supra; Kirk v. United States, supra. Procunier,* however, permits an invasion of a prisoner's fundamental constitutional right of free speech only where the intrusion is so tailored that it furthers the substantial governmental interest without unduly interfering with the prisoner's First Amendment freedoms.

As with the prior consideration of the various alternatives available to the court to protect the witness, we are unable to decide if the order as issued is the least restrictive means of protecting witness Ms. Joiner from any improper harassment by Wheeler on this record.

### CONCLUSION

As stated above, we vacate the district court's order of July 26, 1979, dismissing the petition to vacate the order of January 6, 1975, and remand for further consideration

by the district court in accordance with this opinion. On remand, the district court must first address the due process issue raised by petitioner Wheeler. If the court finds there was no due process violation, it must then consider the necessity of protecting Ms. Joiner under the facts as they presently exist. Finally, if protection is required, the court must address the merits. It must explore the various alternatives available to effect the desired protection and choose the most appropriate means in light of both the court's inherent, but circumscribed, power to protect witnesses and Wheeler's First Amendment right to correspond.

---

**20.** The district court did apply this test below.