Filed 3/11/21  P. v. Thomas CA5

### NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>LARRY EARL THOMAS, JR.,<br><br>    Defendant and Appellant. | F077142<br><br>(Super. Ct. No. BF169006A)<br><br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Kern County.  Eric Bradshaw, Judge.

Randall Conner, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Ivan P. Marrs, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

**SEE CONCURRING AND DISSENTING OPINION**

## INTRODUCTION

Appellant Larry Earl Thomas, Jr., confronted a woman in the women's bathroom of a coffee shop. He locked the door and advanced on her but the victim was able to push past him and escape. A jury convicted him of attempted false imprisonment by violence or menace (Pen. Code, §§ 664/236/237, subd. (a)).[1] The court denied probation and sentenced him to the upper term of 18 months in jail. Thomas was ordered to stay 400 yards away from the victim and the coffee shop (the "protective order"). The court also imposed (in part) a $300 minimum restitution fine (§ 1202.4, subd. (b)), a $40 court operations assessment (§ 1465.8, subd. (a)(1)), and a $30 criminal conviction assessment (Gov. Code, § 70373, subd. (a)(1)).

Thomas contends that the protective order is unauthorized. We agree and we will order it stricken. Thomas also asserts that, pursuant to *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*), this court should order the trial court to strike the financial obligations imposed above unless and until the prosecution can show that he has the ability to pay. The panel is divided on this issue, but the majority rejects the *Dueñas* claim. We will strike the protective order but otherwise affirm the judgment.

## BACKGROUND

Thomas does not challenge the sufficiency of the evidence supporting his conviction.[2] Instead, he raises sentencing issues. As such, we provide only a brief summary of the material evidence supporting his judgment.

---

[1] All future statutory references are to the Penal Code unless otherwise noted. The conviction in count 3 was a lesser included offense. The jury acquitted Thomas of the greater charge of false imprisonment with violence or menace (§§ 236/237, subd. (a)).

[2] In counts 1 and 2, the jury acquitted Thomas of first degree burglary (§ 460, subd. (a)) and assault in the commission of burglary with intent to rape (§§ 220, subd. (b)/261, subd. (a)(2)). These charges involved a different victim. Because Thomas was acquitted, we omit the trial facts involving counts 1 and 2. No issues on appeal pertain to those charges.

In July 2017, Thomas entered a coffee shop in Kern County. He asked a female employee (the victim) for a cup of water, which she provided. An hour or two later, the victim was preparing to leave at the conclusion of her shift. She entered the women's restroom. Thomas was inside that restroom and he startled her when he emerged from a stall. She told Thomas that he should not be there. He said, "Yeah, I know." He locked the main door to the restroom. The victim felt scared and panicked, and Thomas kept his eyes fixed on her. After locking the door, he walked towards her. She pushed him, and she was able to unlock the restroom door and escape. She was crying and she reported the incident to her manager, who called 911.

Law enforcement showed the victim a photographic lineup, and she identified Thomas as the man who confronted her in the bathroom. She "noticed him right away." In court, the victim identified Thomas as the man who confronted her in the restroom. She was "positive" about her identification.

## DISCUSSION

### I. The Trial Court Issued an Unauthorized Protective Order, Which We Order Stricken.

During sentencing, the prosecutor read a letter from the victim, who was present in court. In her letter, the victim expressed how emotionally distraught she had become due to her experience with Thomas. She indicated that Thomas's presence in the bathroom, and how he had locked her inside the bathroom, had badly frightened her, and she had developed post-traumatic stress disorder and depression. She described herself as "emotionally unstable" and suffering from anxiety. She noted that, about a month before the sentencing hearing, a man had accidentally walked into a women's restroom and immediately walked out, which had caused her a panic attack. She was seeing a therapist, which had helped, but she lived in fear that she would one day see Thomas in

public. She stated that she did not know how she would react. She hoped Thomas would learn from his mistakes and not cause emotional trauma to someone else.

A short time after reading the victim's impact statement, the prosecution asked for a protective order on her behalf, and to include the coffee shop where this incident occurred. Defense counsel did not object. The court stated it would grant the request.

The court later spoke to Thomas directly, indicating that the victim had "expressed very eloquently" how serious Thomas's actions had been. The court stated, "This is predatorial behavior. This was a situation where you went into a woman's restroom knowing exactly what you were doing and you had probably a fairly long-lasting, if not permanent, effect on this young lady."

On March 8, 2018, the trial court issued a protective order using Judicial Council Form CR-161 (the form). The form is titled, "CRIMINAL PROTECTIVE ORDER – OTHER THAN DOMESTIC VIOLENCE." The form has three boxes which may be checked to show that the protective order was issued either under (1) section 136.2; (2) 136.2, subdivision (i)(1); or (3) section 646.9, subdivision (k). None of these boxes were checked.

In part, the protective order prohibited Thomas from coming within 400 yards of the victim, or from otherwise harassing or stalking her. No expiration date was indicated, but the protective order expressly "expires three years from date of issuance." The court also ordered Thomas to stay away from the coffee shop.

A. **Standard of review.**

An abuse of discretion standard is used to review whether a trial court had authority to issue a protective order. (*Townsel v. Superior Court* (1999) 20 Cal.4th 1084, 1087 (*Townsel*).) Under that standard, we will not disturb the trial court's decision on appeal unless it acted in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice. (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124-

1125; see *People v. Williams* (1998) 17 Cal.4th 148, 162 [abuse of discretion review asks whether ruling in question falls outside bounds of reason under applicable law and relevant facts].)

**B.     Analysis.**

In a series of arguments, Thomas contends that the protective order was not statutorily authorized and must be stricken.  He also asserts that his defense counsel rendered ineffective assistance in failing to object to its imposition.  Finally, he argues that the protective order is overbroad and violates some of his constitutional rights.

In response, respondent concedes that no specific statute authorizes the protective order.  Instead, respondent asserts that the trial court exercised its "inherent authority" to impose the protective order "in response to the particular needs" of the victim.  Respondent points to the victim's impact statement.  According to respondent, the trial court made a reasonable sentencing decision, and the protective order "fell within the trial court's broad inherent authority."

We agree with Thomas that the protective order is unauthorized and we reject respondent's various assertions.  As an initial matter, however, we must address Thomas's request for judicial notice and the parties' dispute regarding forfeiture.

**1.     We deny Thomas's request for judicial notice.**

To support some of his arguments regarding the protective order, Thomas filed a request for judicial notice with this court.  Pursuant to California Rules of Court, rule 8.252 and Evidence Code sections 452 and 459, he asks us to take judicial notice of a Google map purportedly depicting a 400-yard area in Bakersfield, California, around the coffee shop involved in this incident.  Respondent opposes appellant's request because this information was not presented to the trial court.

As a general rule, an appellate court should not take judicial notice of information that was neither presented in the lower court nor considered by the trial court in the first

instance. (*People v. Preslie* (1977) 70 Cal.App.3d 486, 493.) Generally, documents not before the trial court cannot be part of an appellate record. "Although a reviewing court may take judicial notice of matters not before the trial court, the reviewing court need not give effect to such evidence." (*People v. Hamilton* (1986) 191 Cal.App.3d Supp. 13, 21.)

Thomas concedes that the information in his request for judicial notice was not presented below. Accordingly, we agree with respondent's position, and we deny Thomas's request for judicial notice.

### 2.     We decline to find forfeiture.

Because Thomas failed to object to the protective order in the lower court, respondent claims that his claims are not cognizable on appeal. We disagree with respondent in this regard. A similar forfeiture argument was rejected in *People v. Ponce* (2009) 173 Cal.App.4th 378 (*Ponce*).

"As a general rule, an appellant waives issues on appeal that he or she did not initially raise in the trial court. [Citation.] But there are exceptions to this rule for unauthorized sentences and sentencing decisions that are in excess of the trial court's jurisdiction. [Citation.] Because this case involves the jurisdictional validity of the trial court's decision to issue a three-year protective order during sentencing, we will consider [the defendant's] claim on the merits." (*Ponce, supra*, 173 Cal.App.4th at pp. 381-382.)

We find *Ponce*'s reasoning compelling, and we will follow it. Respondent, however, cites *People v. Stowell* (2003) 31 Cal.4th 1107 (*Stowell*) to support its forfeiture argument. In that matter, the high court held that, in order to preserve a challenge for appeal, a defendant was required to object in the lower court regarding an order pertaining to HIV testing. (*Id.* at p. 1111.) The *Stowell* court determined that forfeiture was appropriate because HIV testing does not constitute punishment, so "it cannot properly be considered a sentencing choice." The Legislature had enacted various "HIV testing statutes as health and safety measures to combat the spread of AIDS, not to

6.

increase criminal penalties." (*Id.* at p. 1113.)  Further, when imposing the HIV testing order, the trial court had failed to make a required finding of probable cause.  That procedural defect, however, did "not implicate any fundamental or constitutional right that might excuse the failure to object." (*Id.* at p. 1114.)

Unlike in *Stowell*, the protective order in this matter lacked any statutory authority.  Further, the imposition of this protective order involves more than a mere procedural defect.  As such, we agree with Thomas that *Stowell* is distinguishable, and we decline to find forfeiture in this situation.  We turn to the merits of this claim.

### 3. The protective order must be stricken.

Respondent concedes that the trial court lacked any statutory authority to issue the protective order in question.  We agree.  Section 136.2 provides that a trial court may issue a protective order during the pendency of a criminal trial, but not after conviction. (*Ponce, supra,* 173 Cal.App.4th at pp. 382-383.)  Other statutes provide for protective orders in domestic violence cases (§ 1203.097), in stalking cases (§ 646.9, subd. (k)), and in enumerated sex offenses where the victim is a minor (§ 1202.05).  None of these other statutes are applicable in this matter.

We note that, when imposing terms and conditions of probation, a sentencing court is authorized to issue a reasonable stay-away order pursuant to its broad discretion under section 1203.1.  (§ 1203.1, subd. (j); *People v. Selga* (2008) 162 Cal.App.4th 113, 120; *People v. Balestra* (1999) 76 Cal.App.4th 57, 65.)  That option, however, was not available here because the trial court denied probation.  In general, an unauthorized restraining order with no statutory basis, which was not imposed as a condition of probation, must be reversed.  (*Ponce, supra,* 173 Cal.App.4th at p. 383.)

Despite a lack of statutory authority, respondent asserts that the court was authorized to issue this protective order under its "inherent authority."  The same argument was made and rejected, in large part, in *Ponce*.

7.

In *Ponce*, a protective order was issued for the victim after the defendant pleaded no contest to second degree robbery with a street gang enhancement and was sentenced to state prison. The trial court based the protective order on section 136.2. (*Ponce, supra,* 173 Cal.App.4th at p. 380.) The *Ponce* court determined that no statutory basis existed for the protective order. (*Id.* at pp. 382-383.) Moreover, the appellate court rejected the government's argument that, even if the trial court had acted under its inherent authority, the protective order was authorized. (*Id.* at pp. 383-384.) *Ponce* held that, even if a trial court has inherent authority over an area where the Legislature has not acted, that does not permit orders to be issued "by fiat" or without a valid showing justifying its need. (*Id.* at p. 384.)

In *Ponce*, there was no evidence that after being charged the defendant "had threatened, or had tried to dissuade, any witness, or had tried to unlawfully interfere with the criminal proceedings." (*Ponce, supra,* 173 Cal.App.4th at p. 384.) The prosecutor did not make an offer of proof or any argument to justify the need for a protective order. A "prosecutor's wish to have such an order, without more, is not an adequate showing sufficient to justify the trial court's action." (*Id.* at pp. 384-385.)

The *Ponce* court allowed that, in unique and compelling circumstances, such as where the defendant threatened witnesses after having been charged, a court may be justified in exercising its inherent power to issue a protective order. (*Ponce, supra,* 173 Cal.App.4th at pp. 384-385.) The appellate court, however, concluded that inherent powers should not be exercised in a way that nullifies existing legislation. "Where the Legislature authorizes a specific variety of available procedures, the courts should use them and should normally refrain from exercising their inherent powers to invent alternatives." (*Id.* at p. 384.)

In this matter, and similar to *Ponce*, the trial court issued a protective order without a statutory basis. The prosecutor never explained why a protective order was

8.

necessary beyond the imposition of judgment. Nothing shows that Thomas continued to threaten the victim, or had attempted to intimidate her from testifying against him. The trial court never stated it was issuing this protective order under its "inherent authority." Even if it had done so, *Ponce* makes it clear that the protective order was improper in this situation.

Respondent contends that *Ponce* is distinguishable. According to respondent, the protective order imposed against Thomas "was directly responsive to his own actions and the specific impact he left on his victim." We disagree with respondent that we should disregard *Ponce*. Instead, its analysis is persuasive and it establishes that the protective order in this matter must be stricken.

Finally, respondent cites three cases: (1) *People v. Clayburg* (2012) 211 Cal.App.4th 86 (*Clayburg*); (2) *Wheeler v. United States* (9th Cir. 1981) 640 F.2d 1116 (*Wheeler*);[3] and (3) *Townsel, supra,* 20 Cal.4th 1084 (*Townsel*) in support of the lawfulness of the protective order. These opinions are inapplicable.

First, *Clayburg* deals with stay-away orders as part of a defendant's conviction of stalking under section 646.9. (*Clayburg, supra,* 211 Cal.App.4th at pp. 88-89.) That statute, however, expressly permits stay-away orders. (§ 646.9, subd. (k).)

Second, in *Wheeler,* a trial judge issued a no-contact order against a defendant. The court found that during trial the defendant "was trying to force [a witness] to commit perjury." (*Wheeler, supra,* 640 F.2d at p. 1118, fn. 2.) The Ninth Circuit concluded that a federal trial court had the "inherent power" in certain situations to issue an order to protect a witness even after a trial concluded, but such orders are extraordinary and should be issued rarely. (*Id.* at p. 1124, fn. 15.) Even where a defendant has previously harassed a witness at trial, to issue a posttrial witness protection order, the trial court must

---

**3**      We "are not bound by the decisions of the lower federal courts even on federal questions." (*People v. Bradley* (1969) 1 Cal.3d 80, 86.)

9.

still determine "the necessity of protecting [the witness] under the facts as they presently exist." (*Id*. at p. 1126.) To obtain such an order, the prosecution must make a strong showing of a " 'clear and present danger or a serious and imminent threat,' " and must demonstrate that there are no other available alternatives. (*Id*. at p. 1124.)

Finally, in *Townsel,* our Supreme Court concluded that trial courts have the "inherent judicial power" to limit a party's ability to contact jurors following completion of the trial.[4] (*Townsel, supra,* 20 Cal.4th at p. 1094.) The *Townsel* defendant had been convicted of murdering a witness to a crime and attempting to prevent or dissuade a witness. He was sentenced to death. Almost a decade after the conviction, the defendant filed a habeas petition to investigate possible juror misconduct. (*Id.* at p. 1097.) Under these circumstances, our high court concluded that the trial court had not abused its discretion in requiring that appellate counsel approach jurors through the court, which could act as a gatekeeper and protect the jurors' privacy. (*Ibid.*)

Here, we have no doubt that Thomas's crime caused the victim extreme distress. However, an insufficient showing was made establishing the need for a nonstatutory protective order to exist beyond the imposition of this judgment. *Clayburg*, *Townsel* and *Wheeler* are distinguishable. None of these opinions demonstrate that the protective order in this matter was appropriate. Accordingly, we order it stricken. (See *Ponce, supra,* 173 Cal.App.4th at p. 386.) Because we strike the protective order in its entirety, we need not reach Thomas's remaining arguments regarding its constitutionality or whether he received ineffective assistance of counsel.

---

**4**     This issue arose before the Legislature had enacted statutes, and amended existing ones, "to maximize juror privacy and safety, while retaining a criminal defendant's ability to contact jurors after the trial if sufficient need is shown." (*Townsel, supra*, 20 Cal.4th at p. 1087.)

**II.** ***Dueñas*** **is Distinguishable from the Present Matter and the Trial Court Did Not Violate Thomas's Constitutional Rights; Any Presumed Constitutional Error is Harmless.**

The trial court imposed upon Thomas (in part) a $300 minimum restitution fine (§ 1202.4, subd. (b)), a $40 court operations assessment (§ 1465.8, subd. (a)(1)), and a $30 criminal conviction assessment (Gov. Code, § 70373, subd. (a)(1)).

Thomas asserts that he is indigent. He contends that the imposition of these obligations without a hearing regarding his ability to pay violates due process and should be stricken until the prosecution can prove that he has the ability to pay. He rests his claim on *Dueñas, supra,* 30 Cal.App.5th 1157.

In multiple opinions, this court has already written extensively about *Dueñas*. (See, e.g., *People v. Son* (2020) 49 Cal.App.5th 565; *People v. Lowery* (2020) 43 Cal.App.5th 1046 (*Lowery*); *People v. Aviles* (2019) 39 Cal.App.5th 1055 (*Aviles*).) The panel in this matter is divided on this issue. The majority holds that *Dueñas* is distinguishable from Thomas's situation, his constitutional rights were not violated, and any presumed error is harmless. In contrast, the dissent asserts that this matter should be remanded to allow Thomas an opportunity to request an ability to pay hearing with respect to the nonpunitive assessments imposed under section 1465.8 and Government Code section 70373. (Conc. & dis. opn. *post*, at p. 1.)

**A.  The facts from *Dueñas*.**

The defendant in *Dueñas* had cerebral palsy, which caused her to drop out of high school and left her unemployed. Her husband was also unemployed, although occasionally he was able to obtain short-term work in construction. (*Dueñas, supra,* 30 Cal.App.5th at p. 1160.) The defendant lost her driver's license because she was too poor to pay juvenile citations. (*Id.* at p. 1161.) She continued to offend because aggregating criminal conviction assessments and fines prevented her from recovering her license. (*Ibid.*) The *Dueñas* court described this as "cascading consequences" stemming from "a

11.

series of criminal proceedings driven by, and contributing to, [the defendant's] poverty." (*Id.* at pp. 1163-1164.) The *Dueñas* court concluded the defendant faced ongoing unintended punitive consequences because of the imposed financial obligations. *Dueñas* determined those unintended consequences were "fundamentally unfair" for an indigent defendant under principles of due process.[5] (*Id.* at p. 1168.)

The *Dueñas* court concluded that due process requires a trial court to conduct an ability to pay hearing, and ascertain a defendant's present ability to pay, before it imposes certain assessments under section 1465.8 and Government Code section 70373. (*Dueñas*, *supra*, 30 Cal.App.5th at p. 1164.) *Dueñas* also held that, although section 1202.4 bars consideration of a defendant's ability to pay unless the judge is considering increasing the fee over the statutory minimum, the execution of any restitution fine imposed under this statute must be stayed unless and until the trial court holds an ability to pay hearing and concludes that the defendant has the present ability to pay the restitution fine.[6] (*Dueñas*, *supra*, 30 Cal.App.5th at p. 1164.)

---

[5]     The *Dueñas* court noted that the imposed financial obligations were also potentially unconstitutional under the excessive fines clause of the Eighth Amendment. However, *Dueñas* stated "[t]he due process and excessive fines analyses are sufficiently similar that the California Supreme Court has observed that '[i]t makes no difference whether we examine the issue as an excessive fine or a violation of due process.'" (*Dueñas*, *supra*, 30 Cal.App.5th at p. 1171, fn. 8.)

[6]     A different panel of the same court that decided *Dueñas* rejected the argument that *Dueñas* places a burden on the People to prove a defendant's ability to pay in the first instance. (*People v. Castellano* (2019) 33 Cal.App.5th 485, 489-490 (*Castellano*).) *Castellano* clarifies that the defendant in *Dueñas* had demonstrated her inability to pay in the trial court and, only in that circumstance, had the appellate court concluded fees and assessments could not constitutionally be assessed and restitution must be stayed until the People proved ability to pay. (*Castellano*, *supra*, at p. 490.) Thus, "a defendant must in the first instance contest in the trial court his or her ability to pay the fines, fees and assessments to be imposed and at a hearing present evidence of his or her inability to pay the amounts contemplated by the trial court." (*Ibid.*)

### B. We decline to find forfeiture in this situation.

The parties disagree whether Thomas's *Dueñas* claim is cognizable on appeal following his failure to object below. We decline to find forfeiture in this situation. By statute, a defendant's inability to pay may not be considered when a trial court imposes a minimum restitution fine. (§ 1202.4, subd. (c).)

Thomas had a minimum restitution fine imposed against him. Thus, at the time of his sentencing, a due process challenge to this fine would have been effectively foreclosed. (*People v. Jones* (2019) 36 Cal.App.5th 1028, 1031.) "Similarly, the relevant statutes all but foreclosed any due process objections to the court facilities or court operations assessments." (*Id.* at p. 1032.) As such, we will review the merits of this claim.

### C. Unlike the defendant in *Dueñas*, Thomas's constitutional rights were not violated.

The majority declines to expand *Dueñas*'s holding beyond the unique facts found in *Dueñas*. Thomas does not establish the violation of a fundamental liberty interest. His incarceration was not a consequence of prior criminal assessments and fines. He was not deprived of liberty because of his alleged indigency. He was not caught in a cycle of "cascading consequences" stemming from "a series of criminal proceedings driven by, and contributing to, [his] poverty." (*Dueñas*, *supra*, 30 Cal.App.5th at pp. 1163-1164.) Thomas could have avoided the present conviction regardless of his financial circumstances. *Dueñas* is distinguishable and it has no application in this matter. (See *Lowery*, *supra*, 43 Cal.App.5th at pp. 1054-1055.)

We agree with respondent that a criminal restitution fine, which does not impact a fundamental right, survives rational basis review. Under rational basis review, a law does not violate due process if its enactment is procedurally fair and reasonably related to a proper legislative goal. (*Perkey v. Department of Motor Vehicles* (1986) 42 Cal.3d 185, 189.) Here, it is apparent that the State of California has a legitimate goal in punishing

13.

criminal behavior. As such, the restitution fine imposed upon Thomas survives rational basis scrutiny.

Finally, respondent states that due process is implicated when nonpunitive assessments are imposed on indigent defendants, and respondent notes that it does not seek to uphold imposition of nonpunitive assessments on those who cannot pay.[7] Respondent, however, asserts that any constitutional violation in this matter was harmless beyond a reasonable doubt.

The majority disagrees with respondent's suggestion that a constitutional violation may have occurred associated with the nonpunitive assessments. To the contrary, these obligations are not analogous to the imposition of court reporter fees on an indigent defendant. (See *Griffin v. Illinois* (1956) 351 U.S. 12, 18-20 [due process and equal protection require a state to provide criminal defendants with a free transcript for use on appeal].) Thomas was not incarcerated because he was unable to pay prior fees, fines or assessments. (See *Bearden v. Georgia* (1983) 461 U.S. 660, 672-673 [fundamental fairness is violated if a state does not consider alternatives to imprisonment if a probationer in good faith cannot pay a fine or restitution].) The imposition of the nonpunitive assessments in this matter did not deny Thomas access to the courts, it did not prohibit him from presenting a defense, and it did not prevent him from pursuing his appellate claims. The defendant in *Dueñas* presented compelling evidence that the imposed assessments *had resulted* in ongoing unintended punitive consequences. In contrast, although Thomas could suffer any number of future unintended consequences, mere speculation does not establish a present constitutional infirmity. (See *Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1084 [hypothetical situations are insufficient to

---

[7] "A restitution fine (§ 1202.4, subd. (b)(1)) represents punishment. [Citation.] In contrast, a court operations assessment (§ 1465.8, subd. (a)(1)) and a criminal conviction assessment (Gov. Code, § 70373, subd. (a)(1)) are not considered punishment." (*Lowery, supra,* 43 Cal.App.5th at p. 1048, fn. 3.)

14.

establish a statute is facially unconstitutional].)  A law may not be held unconstitutional on its face "simply because those challenging the law may be able to hypothesize some instances in which application of the law might be unconstitutional."  (*American Academy of Pediatrics v. Lungren* (1997) 16 Cal.4th 307, 347, plur. opn. of George, C. J.)

Based on this record, it was not fundamentally unfair for the trial court to impose the restitution fine and the nonpunitive assessments in this matter without first determining Thomas's ability to pay.  Therefore, we reject his constitutional challenges and the applicability of *Dueñas* in this matter.[8]  (See *Lowery, supra*, 43 Cal.App.5th at pp. 1056-1057.)

### D.     Any presumed error is harmless.

Even if *Dueñas* is applicable and Thomas's constitutional rights were violated, prejudice did not occur.  Numerous opinions find no prejudicial error if a convicted defendant has the ability to earn wages while in prison.  (See *Lowery, supra*, 43 Cal.App.5th at p. 1060; *Aviles, supra,* 39 Cal.App.5th at p. 1076; *People v. Hennessey* (1995) 37 Cal.App.4th 1830, 1837.)  That same reasoning applies here.

Thomas refused to provide any information to the probation officer about his education, health, disabilities, employment record or financial status.  The probation officer concluded that Thomas had no assets, but the officer believed that Thomas was able to work.  Thomas's mother submitted a letter to the trial court which indicated that he had been diagnosed with "spinal meningitis" at two months of age, and he had suffered undisclosed "learning disabilities."  During sentencing, Thomas's defense counsel informed the trial court that Thomas lacked the ability to pay the full cost of representation (about $20,000) due to "intellectual disabilities" and lack of "stable

---

[8]     Respondent urges us to resolve this claim through the Excessive Fines Clause in the Eighth Amendment of the United States Constitution.  We need not conduct this analysis because Thomas does not raise his claim under the Eighth Amendment and his due process challenge fails.

15.

employment for a long time." Thomas, however, tentatively indicated that $550 was reasonable, but he could not say for certain. The court stated that Thomas seemed like somebody who could work, and it ordered him to pay $1,000 for the legal representation he had received in this matter.

Nothing in this record reasonably suggests that Thomas is unable to work. He has a relatively short jail sentence. We can infer that, once he is released from custody, he has the ability to earn wages. Although it may take him time, nothing reasonably implies that Thomas cannot pay the imposed obligations. Moreover, unlike the defendant in *Dueñas*, he is not facing repeated incarceration because of his financial status. Thus, any presumed constitutional error, especially at this juncture, is harmless beyond a reasonable doubt. (See *Chapman v. California* (1967) 386 U.S. 18, 24.) Therefore, Thomas's constitutional challenges based on *Dueñas* are without merit, and this claim fails.

## DISPOSITION

The protective order issued on March 8, 2018, is stricken. In all other respects, the judgment is affirmed.

HILL, P.J.

I CONCUR:


FRANSON, J.

16.

SMITH, J., Concurring and Dissenting.

I agree with the majority that the protective order must be stricken. I disagree in some respects with the majority's resolution of Thomas's challenge to the fines and fees imposed in this case.

Thomas's challenge to the court assessments and restitution fine imposed here is based on *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*). *Dueñas* held that the court cannot order a defendant to pay court assessments and restitution fines consistent with constitutional requirements, without affording the defendant an opportunity to request an ability to pay hearing. In other words, *Dueñas* held that, under applicable constitutional mandates, such assessments and fines can only be effectuated if the defendant is able to pay them.

I agree with *Dueñas* to the extent it holds that, under the United States Constitution, a defendant must have the opportunity to request an ability to pay hearing before *nonpunitive* court assessments are imposed at sentencing. However, in light of existing United States Supreme Court precedents clarifying that, under the Constitution, indigency is not a bar to enforcement of monetary judgments arising from unpaid fines imposed as *punishment*, I disagree with *Dueñas* to the extent it further holds an ability to pay hearing is constitutionally required before effectuation of the *punitive* restitution fine.

My reasoning is fully detailed in the lead opinion in *People v. Son* (2020) 49 Cal.App.5th 565, 599-601 (lead opn. of Smith, J.). I would remand the matter to give Thomas an opportunity to request an ability to pay hearing with respect to the court operations assessment (Pen. Code, § 1465.8) and the court facilities assessment (Gov. Code, § 70373). I disagree with the majority's assertion that remand is not required because any error was harmless under a reasonable doubt under *Chapman v. California* (1967) 386 U.S. 18, 24 (Maj. opn. *ante*, at p. 16.) Thomas has not yet had an opportunity to request an ability to pay hearing to make a showing that he could not pay the court assessments imposed at sentencing. Accordingly, "no evidence exists in the record from

which to infer any findings in this regard." (*People v. Castellano* (2019) 33 Cal.App.5th 485, 490.) Since the issue of Thomas's inability to pay was not addressed in the trial court, it would be inappropriate to hold the *existing*, and *necessarily incomplete*, record definitively precludes Thomas from demonstrating an inability to pay.

In this context, I also disagree with the majority's reasoning that Thomas should be presumed *able* to pay the court assessments based on actual or potential employment. While there is ample authority supporting the proposition that a prisoner's ability to pay fines and fees may be assessed on the basis of anticipated prison wages (see, e.g., *People v. Jones* (2019) 36 Cal.App.5th 1028, 1035), reliance on that notion is purely speculative at this juncture, given the absence of a record on the issue and the fact that it is unclear whether Thomas can or will be able to work after he is released from jail custody.

With regard to the restitution fine imposed here, I would affirm the restitution fine to the extent Thomas's instant challenge is based entirely on the holding of *Dueñas*. However, Thomas should have an opportunity to challenge the restitution fine, on remand, under the excessive fines clause of the Eighth Amendment. The trial court is best placed to resolve such a claim in the first instance, as the present record is devoid of current information regarding Thomas's financial circumstances and such information is necessary for the Eighth Amendment analysis. (See, e.g., *People v. Cowan* (2020) 47 Cal.App.5th 32, 48, review granted June 17, 2020, S261952 ["Because ability to pay is an element of the excessive fines calculus under both the federal and state Constitutions, we conclude that a sentencing court may not impose court operations or facilities assessments or restitution fines without giving the defendant, on request, an opportunity to present evidence and argument why such monetary exactions exceed his ability to pay."].)

SMITH, J.

2.