**Wang Zong XIAO, Plaintiff–Appellee,**

v.

**William P. BARR, in his capacity as Attorney General of the United States; William T. McGivern, Jr., in his capacity as United States Attorney for the Northern District of California; Reginald L. Boyd, in his capacity as United States Marshal for the Northern District of California; D. Eugene McNary, in his capacity as Commissioner of the Immigration and Naturalization Service; and David Ilchert, in his capacity as District Director of the Immigration and Naturalization Service, Defendants–Appellants. (Two Cases)**

**Nos. 92–15389, 92–16272.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 5, 1992.

Decided Oct. 30, 1992.

Steven R. Valentine, Deputy Asst. Atty. Gen., Lauri Steven Filppu, Mark C. Walters, Alexander H. Shapiro, Civil Div., U.S. Dept. of Justice, Washington, D.C., for defendants-appellants.

Cedric C. Chao and Annette P. Carnegie, Morrison & Foerster, San Francisco, Cal., for plaintiff-appellee.

Before POOLE, FERNANDEZ, and T.G. NELSON, Circuit Judges.

POOLE, Circuit Judge:

I.

Pursuant to 8 U.S.C. § 1182(d)(5)(A), appellee Wang Zong Xiao ("Wang") was paroled into this country from the People's Republic of China ("PRC") to testify at the trial of Leung Tak Lun, Chico Wong, and Andrew Wong. Wang had allegedly participated in a conspiracy to import heroin from Shanghai to San Francisco inside condoms sewn into the body cavities of dead goldfish. The *Leung* trial ended disastrously for the government, however, when the court declared a mistrial in response to Wang's revelations that Chinese authorities had tortured and coerced him into confessing and testifying falsely. Wang initially sought asylum, but then on February 5, 1990, he filed a complaint seeking declaratory and injunctive relief to prevent his return to the PRC or delivery into the custody of PRC officials.[1] On February 10, 1990, the district court entered a preliminary injunction, ordering that Wang re-

---

1. An amended complaint was filed on July 5, 1990.

main in the custody of the United States Marshal for the Northern District of California, and enjoining the United States from returning Wang to the PRC. This order was to remain in effect pending final adjudication of Wang's request for asylum.

On July 29, 1991, Wang's request for asylum was denied. On February 18, 1992, the INS terminated Wang's immigration parole and served him with notice that he was being placed in administrative exclusion proceedings. On the same day, Wang requested a hearing on his previously filed Motion for Partial Summary Judgment on his Eleventh Cause of Action, which alleged that the government is "without legal authority over [Wang's] person and may not remove [Wang] from the United States or return [him] to Chinese custody."

On February 20, the district court granted Wang a preliminary injunction preventing the government from moving forward with exclusion or deportation proceedings until final adjudication of the motion for partial summary judgment, and final resolution of all appeals arising therefrom. Four months later, the district court filed an opinion and order granting summary judgment on the eleventh cause of action, and permanently enjoining the government from taking any further action against Wang which could place him in jeopardy of a return to the PRC.

The government appeals both the preliminary injunction and the grant of summary judgment, alleging that the district court lacked jurisdiction to enjoin exclusion proceedings, that the district court erred in concluding that the INS lacked jurisdiction to place Wang in exclusion proceedings, and that the court erred in granting the preliminary injunction and summary judgment. We have consolidated the appeals, and we now reverse.

## II.

■ We must first review the district court's exercise of subject matter jurisdiction over Wang's claim that the Immigration and Naturalization Service ("INS") lacked jurisdiction over him. We review questions of subject matter jurisdiction *de*

*novo. El Rescate Legal Services v. Executive Office of Immigration Review,* 959 F.2d 742, 746 (9th Cir.1991).

The Immigration and Nationality Act ("INA") requires that "[a]n order of deportation or of exclusion shall not be reviewed by any court if the alien has not exhausted the administrative remedies available to him as of right under the immigration laws and regulations...." 8 U.S.C. § 1105a(c). The district court premised its exercise of jurisdiction on its belief that exhaustion was not required since Wang was not appealing an order of exclusion, but rather contesting the INS' authority to place him into exclusion proceedings.

■ We have, however, interpreted the statutory exhaustion requirement of section 1105a(c) more copiously than the reading given it by the district court. Beginning with *Siaba–Fernandez v. Rosenberg,* 302 F.2d 139 (9th Cir.1962), we have consistently held that "Congress intended to deny judicial review to aliens who failed to take advantage of their right to administrative remedies." *Id.* at 141. Thus, in that case, we had no jurisdiction to review an order of deportation from which the appellant failed to appeal to the Board of Immigration Appeals. In *Mir v. Rosenberg,* 390 F.2d 627, 628 (9th Cir.1967), this holding was extended to exclusion proceedings, and in *Sotelo Mondragon v. Ilchert,* 653 F.2d 1254 (9th Cir.1980), we confirmed that failure to exhaust administrative remedies deprives a district court of jurisdiction "to consider the propriety of the ... exclusion hearing" even where "there was no actual decision on exclusion but its absence is attributable to [the alien's] abandonment of the exclusion proceedings...." *Id.* at 1255–56. Thus, even when an alien is not, strictly speaking, seeking to attack a final order of exclusion, judicial review is precluded if the alien has failed to avail himself of all administrative remedies, one of which is the exclusion hearing itself.

In exercising jurisdiction, the district court relied on several cases which have found exceptions to the exhaustion requirement of section 1105a. In *National Cen-*

*ter for Immigrants' Rights v. INS,* 791 F.2d 1351 (9th Cir.1986), *vacated on other grounds,* 481 U.S. 1009, 107 S.Ct. 1881, 95 L.Ed.2d 489 (1987), for instance, we found that a district court had jurisdiction to entertain a suit challenging the implementation of an INS regulation. The government seeks to distinguish this case on the basis that *National Center* involved a class action. This is true, but irrelevant to the question of jurisdiction since "[i]n a class action, the court must have jurisdiction over the claims of the individual members of the class." *Id.* at 1353. Of more importance to the district court's ability to exercise jurisdiction despite the failure to exhaust administrative processes was the fact that the suit challenged conditions imposed on bonds pending deportation or exclusion proceedings, rather than interfering with the administrative determination regarding the excludability or deportability of the aliens themselves. *Id.* at 1354. As the Supreme Court recognized in *Cheng Fan Kwok v. INS,* 392 U.S. 206, 88 S.Ct. 1970, 20 L.Ed.2d 1037 (1968), judicial review may be appropriate, notwithstanding a failure to exhaust administrative remedies, when the suit does "not 'attack the deportation order itself but instead [seeks] relief not inconsistent with it.'" *Id.* at 213, 88 S.Ct. at 1975 (quoting *Tai Mui v. Esperdy,* 371 F.2d 772, 777 (2d Cir.), *cert. denied,* 386 U.S. 1017, 87 S.Ct. 1372, 18 L.Ed.2d 454 (1967)). We have explained that "[t]he purpose of exhaustion is to allow administrative agencies to complete their own decisionmaking procedures and to discourage premature judicial intervention." *Legali-*

*zation Assistance Project v. INS,* 976 F.2d 1198, 1203 (9th Cir.1992). But, where the administrative forum would "provide no real opportunity to present" the constitutional issues raised by the aliens, requiring exhaustion "makes little sense." *Id.* at 1203.

■■■. In *El Rescate Legal Services,* we described the distinction between claims requiring exhaustion and those not requiring exhaustion as being "between jurisdiction to rule on the merits of an individual deportation order and jurisdiction to rule on an alleged pattern and practice of constitutional or statutory violations." 959 F.2d at 746. If the agency lacks authority to resolve the constitutional claims, there is little point to requiring exhaustion. *See Vargas v. U.S. Dep't. of Immigration & Naturalization,* 831 F.2d 906, 908 (9th Cir.1987); *Weinberger v. Salfi,* 422 U.S. 749, 765, 95 S.Ct. 2457, 2466, 45 L.Ed.2d 522 (1975). But, if the constitutional error is a procedural error "correctable by the administrative tribunal," then exhaustion might still be required. *Bagues–Valles v. INS,* 779 F.2d 483, 484 (9th Cir.1985); *Vargas,* 831 F.2d at 908.

■ The issue before us is whether the question of the INS' jurisdiction is appropriately decided in the first instance by the INS, or whether it is an issue beyond the authority of the INS to resolve and remedy. We agree with the government that the INS should be accorded the opportunity to determine its own jurisdiction.[2] The rule of exhaustion is ordinarily understood to require as much. *Marshall v. Burlington*

---

**2.** The legislative history of section 1105a lends some support to the government's position that jurisdiction should be litigated in agency proceedings in the first instance. Congress clearly believed that challenges to the INS jurisdiction could adequately be brought through habeas corpus review in district court of exclusion orders, as outlined in section 1105a(c). The House Report to the 1961 amendments to the INA, in discussing section 1105a(c), observed that:

> Questions have arisen as to the scope and adequacy of habeas corpus proceedings to test an alien's eligibility for entry into the United States under the immigration laws. In that respect, the Committee on the Judiciary has no doubt that the alien's rights are fully safeguarded by according him access to the an-

cient writ. The power of a court to order the release and discharge of an alien seeking admission, who had been excluded in habeas corpus proceedings, extends not only to the determination *as to the procedural aspects* of the administrative proceeding, but also as to the substantive ground upon which the exclusion order was based.

1961 U.S.C.C.A.N. 2975 (citation omitted). The Report discusses, as an example of the adequacy of review through habeas corpus proceedings, the case of *Carmichael v. Delaney,* 170 F.2d 239 (9th Cir.1948). In *Carmichael,* we upheld the district court's grant of a petition for writ of habeas corpus, and voided an exclusion order entered by the INS as being beyond the authority of that agency. *Id.* at 240–41. Congress thus apparently felt that habeas corpus review of

*Northern, Inc.,* 595 F.2d 511, 513 (9th Cir. 1979). There is no indication in statutory or decisional law that the rule should be different in the context of immigration proceedings.

In *Landon v. Plasencia,* 459 U.S. 21, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982), the Supreme Court held that the jurisdictional determination of whether an "entry" occurred must first be decided in exclusion proceedings. The Court observed that "if the respondent ... was making an 'entry,' she would be subject to exclusion proceedings." *Id.* at 31, 103 S.Ct. at 328. Nevertheless, it concluded:

> It is no more "circular" to allow the immigration judge in the exclusion proceeding to determine whether the alien is making an entry than it is for any court to decide that it has jurisdiction when the facts relevant to the determination of jurisdiction are also relevant to the merits.

*Id.* We have subsequently interpreted *Landon* to mean that the Immigration Judge has authority to determine his own jurisdiction. *Castillo–Magallon v. INS,* 729 F.2d 1227, 1228–29 (9th Cir.1984). In *Castillo–Magallon,* the petitioners sought review in this court of an order excluding them from the United States, arguing that exclusion proceedings were improper since they were permanent resident aliens. We dismissed the appeal for lack of jurisdiction, reasoning that:

> the [Immigration Judge] did not specifically address this issue but simply assumed that an exclusion proceeding was appropriate. If he erred in that tacit assumption, he did so in the course of determining his jurisdiction to hold an exclusion proceeding. Review of an exclusion proceeding, even one in which the [Immigration Judge's] jurisdiction is challenged, is available only in a habeas corpus proceeding in the district court.

*Id.* at 1228–29. Since habeas corpus review of an order of exclusion is permitted under section 1105a(c) only following exhaustion of administrative remedies, it follows from section 1105a and *Castillo–Magallon,* that the question of jurisdiction must first be litigated in the exclusion proceedings themselves.

■ In any event, Wang's arguments against INS jurisdiction are not constitutionally based, but rather turn on a question of statutory interpretation—namely whether the INA grants the INS authority over aliens entering the country who do not wish to be admitted to the country. Such questions are within the purview of INS proceedings. *See Loya v. INS,* 583 F.2d 1110, 1114 (9th Cir.1978) ("courts should not ignore the congressional intent of locating alien status disputes in administrative agencies and not the federal courts"). Finally, should the INS in fact be lacking jurisdiction, it is fully within the authority of the Immigration Judge and the Board of Immigration Appeals to remedy the situation by terminating exclusion proceedings. *See, e.g., Matter of Waldei,* 19 I. & N. Dec. 189, 190 (1984) (affirming immigration judge's termination of exclusion proceedings for lack of jurisdiction); *Matter of Badalamenti,* 19 I. & N. Dec. 623, 626–27 (1988) (instructing immigration judge to terminate exclusion proceedings if alien is not an applicant for admission). We therefore conclude that exhaustion of administrative remedies is statutorily mandated, even for Wang's claim that the INS lacks jurisdiction over him.

■ The district court also indicated that an independent ground for jurisdiction might exist in its "inherent supervisory powers to protect witnesses appearing before it." We disagree, however, that the court's supervisory powers allow it to exercise jurisdiction in these circumstances in derogation of the exhaustion requirement of section 1105a.

In *Wheeler v. United States,* 640 F.2d 1116 (9th Cir.1981), we approved of a district court order requiring the custodian of a federal prisoner to prevent the prisoner from communicating with certain named witness. We held that federal courts pos-

orders of exclusion provided an adequate forum for challenging the authority of the INS to con- duct exclusion proceedings.

sess the inherent power, "in certain unusual circumstances, [to] issue a post-trial order to protect a witness." *Id.* at 1123. The exercise of the court's powers to protect a witness after the conclusion of the trial was justified as:

> promot[ing] the more general purpose of protecting the administration of justice from "abuses, oppression and injustice." By protecting the witness after the trial, the court is encouraging that witness, and other potential witnesses, to come forward and provide information helpful to the implementation of justice.

*Id.* (quoting *Bitter v. United States*, 389 U.S. 15, 16, 88 S.Ct. 6, 7, 19 L.Ed.2d 15 (1976)). We also observed, however, that the supervisory power "must be exercised 'with circumspection ... [and] only when ... defendant's conduct presents ... significant interference with the [administration of justice].'" *Id.* at 1124 (quoting *Bitter*, 389 U.S. at 16, 88 S.Ct. at 7). We further qualified the holding, however, by observing that when the order interferes with functions of the executive branch, the executive must be given due respect. *Id.* at 1125; *see also United States v. Simpson*, 927 F.2d 1088, 1089 (9th Cir. 1991) ("the supervisory power ... does not 'justify a chancellor's foot veto over activities of coequal branches of government.'") (quoting *United States v. Gatto*, 763 F.2d 1040, 1046 (9th Cir.1985)).

Given the statutory mandate requiring exhaustion, and the availability of habeas corpus relief from any final order of exclusion, the district court should have accorded the executive proceedings due respect, and consequently should have refrained from exercising jurisdiction. This is not a case where the administrative proceedings are not equipped to provide Wang with the remedies he seeks. In fact, it is within the province of the Immigration Judge and the Board of Immigration Appeals to consider the need to protect Wang, and either to grant him asylum or stay his deportation. *See* 8 C.F.R. § 208.2(b) (immigration judge to review asylum claims *de novo*); 8 C.F.R. § 236.3 (immigration judge to consider application for asylum and withholding of deportation during the course of exclusion proceedings). The habeas corpus proceedings, to which Wang is statutorily entitled at the conclusion of exclusion proceedings, are adequate to afford the district court an opportunity to protect him, as a former witness, from "abuses, oppression, and injustice."

### III.

Since Wang has not, as yet, exhausted his administrative remedies, we will not address the merits of the district court's conclusion that the INS lacks jurisdiction over Wang. Lacking jurisdiction, the district court erred in entering the preliminary injunction and granting summary judgment. Consequently, the preliminary injunction is VACATED, the grant of summary judgment is REVERSED, and the case is REMANDED to the district court with directions to dismiss the claims in Wang's Eleventh Cause of Action for lack of jurisdiction.

VACATED, REVERSED and REMANDED with instructions.