70 F.3d 1279
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
PROYECTO SAN PABLO; Labor Immigrant Assistance Project;
John A; John F; John T; Jane S; John M; Jane T; John
G; and Jane B, individually and on behalf of others
similarly situated, Plaintiffs-Appellees/Cross-Appellants,
v.
IMMIGRATION & NATURALIZATION SERVICE; Janet Reno,
* U.S. Attorney General; James Buck, Acting
Commissioner, Immigration & Naturalization Service; Dennis
Keefe, Director, Legalization Appeals Unit; Department of
State, Defendants-Appellants/Cross-Appellees.
 Nos. 91-16620, 92-15153 and 92-15159.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 4, 1992.
Memorandum withdrawn Oct. 4, 1993.
Resubmitted June 29, 1995.
Memorandum withdrawn Nov. 9, 1995.
Decided Nov. 20, 1995.
 
 Before: WRIGHT, HUG, and POOLE, Circuit Judges.
 
 ORDER
 
 1
 The memorandum disposition, filed July 13, 1995, is hereby withdrawn effective November 9, 1995.
 
 
 2
 MEMORANDUM**
 
 
 3
 The Immigration and Naturalization Service ("INS") appeals the district court's decision to grant partial summary judgment in favor of a class of aliens challenging the INS's interpretation of 8 U.S.C. Sec. 1255a(g)(2)(B)(i), a provision of the Immigration Reform and Control Act of 1986 ("IRCA") concerning aliens' eligibility for legalization. In light of the Supreme Court's ruling in Reno v. Catholic Social Services, --- U.S. ----, 113 S.Ct. 2485 (1993), and our ruling in Naranjo-Aguilera v. INS, 30 F.3d 1106 (9th Cir.1994), we must agree with the INS and reverse the order of the district court for lack of jurisdiction. We remand the case to the district court to determine whether it has jurisdiction to consider the procedural arguments and for a determination consistent with this memorandum.
 
 BACKGROUND
 
 4
 In response to growing concerns over the influx of illegal aliens into the United States, Congress passed the IRCA as an amendment to the Immigration and Nationality Act of 1952. The IRCA established two provisions under which undocumented aliens could obtain legal resident status. See 8 U.S.C. Secs. 1160, 1255a. It is the second provision, 8 U.S.C. Sec. 1255a, which is at issue in this case. Section 1255a established a one-time only legalization program through which aliens can apply for lawful temporary resident status and then, after a one-year waiting period, apply for permanent residency.
 
 
 5
 Under section 1255a, an alien must satisfy four conditions to obtain temporary resident status. First, the alien must file a timely application. 8 U.S.C. Sec. 1255a(a)(1). Second, the alien must establish that he has been a continuous unlawful resident of the United States since January 1, 1982. 8 U.S.C. Sec. 1255a(a)(2). Third, the alien must prove that he has maintained a continuous physical presence in the United States since November 6, 1986. 8 U.S.C. Sec. 1255a(a)(3). Fourth, the alien must establish that he is admissible to the United States as an immigrant. 8 U.S.C. Sec. 1255a(a)(4).
 
 
 6
 The second condition to obtaining temporary resident status states:
 
 
 7
 (2) Continuous unlawful residence since 1982
 
 
 8
 (A) In general
 
 
 9
 The alien must establish that he entered the United States before January 1, 1982, and that he has resided continuously in the United States in an unlawful status since such date and through the date the application is filed under this subsection.
 
 
 10
 8 U.S.C. Sec. 1255a(a)(2)(A).
 
 
 11
 This appeal arises out of a challenge to the INS's interpretation of a provision that further defines this second condition:
 
 
 12
 (B) Absences caused by deportation or advanced parole
 
 
 13
 The Attorney General shall provide that--
 
 
 14
 (i) an alien shall not be considered to have resided continuously in the United States, if, during any period for which continuous residence is required, the alien was outside the United States as a result of a departure under an order of deportation[.]
 
 
 15
 8 U.S.C. Sec. 1255a(g)(2)(B)(i). The INS interprets this provision to apply with equal force to the alien who is forcibly deported by the Government and the alien who, intending to return, voluntarily departs for a brief visit at a time when there is in effect an order of deportation against him. According to the INS, both aliens are "outside the United States as a result of a departure under an order of deportation." The district court disagreed with the INS's interpretation and held that the statute requires that an alien's departure from the United States be caused by a deportation order to constitute a break in a period of continuous unlawful residence. We review de novo. Xiao v. Barr, 979 F.2d 151, 153 (9th Cir.1992). Although the district court's interpretation of the statute is eminently reasonable, we must nevertheless reverse for lack of jurisdiction.
 
 DISCUSSION
 
 16
 In Catholic Social Services, the Supreme Court recently established a policy of broad deference to INS interpretations of substantive eligibility requirements under the IRCA. As the Supreme Court explained, the Reform Act "provides an exclusive scheme for administrative and judicial review of 'determination[s] respecting ... application[s] for adjustment of status' under the Title II legalization program." Catholic Social Services, 113 S.Ct. at 2493. Under this scheme, judicial review is ordinarily limited to deportation orders issued under 8 U.S.C. Sec. 1105a. Id.
 
 
 17
 An alien seeking judicial review of an order affecting adjustment of status must present a ripe claim. Id. at 2495. A claim is ripe when the challenged administrative action has been " 'felt in a concrete way by the challenging parties.' " Id. (quoting Abbott Laboratories v. Gardner, 387 U.S. 136, 148-49 (1967)). In the present case, as in Catholic Social Services, the regulations at issue "impose no penalties for violating any newly imposed restriction, but limit access to a benefit created by the Reform Act but not automatically bestowed on eligible aliens." Id. at 2496. In other words, before the alien's claim becomes ripe, he or she must take all additional affirmative steps towards obtaining the benefit before the INS blocks the path by applying the regulation. Id.
 
 
 18
 As the Court explained, this would ordinarily occur in the context of the INS's formal denial of the alien's application on the ground that the regulation rendered him ineligible for legalization. Id. at 2497. That is precisely the posture of the claims in the present action. "A plaintiff who sought to rely on the denial of his application to satisfy the ripeness requirement, however, would then still find himself at least temporarily barred by the Reform Act's exclusive review provisions, since he would be seeking 'judicial review of a determination respecting an application.' " Id. (quoting 8 U.S.C. Sec. 1255a(f)(1)). As the Court noted, the ripeness doctrine and the Reform Act's scheme of limited judicial review "dovetail neatly, and not necessarily by mere coincidence" to bar courts in the ordinary case from examining an alien's claims until he or she has been ordered deported. Id.
 
 
 19
 Of course, the district court does retain jurisdiction to examine certain claims in the first instance. For example, in McNary v. Haitian Refugee Center, Inc., 498 U.S. 479, 496-97 (1991), the Court held that a district court had jurisdiction to examine claims that could receive no practical judicial review within the scheme established by 8 U.S.C. Sec. 1160(e). See also Catholic Social Services, 113 S.Ct. at 2497 (reaffirming holding in McNary ). In Catholic Social Services, the Court noted that there may be some circumstances where INS procedures prevent an alien from seeking benefits under the Reform Act and, at the same time, exclude him from even the limited administrative and judicial review provisions of the Reform Act. See id. at 2498-99; see also Naranjo-Aguilera, 30 F.3d at 1111-13 (discussing permissible subjects of district court jurisdiction as outlined in Catholic Social Services and McNary ).
 
 
 20
 In this case, neither of these circumstances is present in the district court's order regarding the INS interpretation of the "caused by" clause of 8 U.S.C. Sec. 1255a(g)(2)(B)(i) and the district court was, accordingly, without jurisdiction to examine the aliens' claims. As we clearly stated in Naranjo-Aguilera, the holding of Catholic Social Services "forecloses aliens from challenging INS regulations or policies interpreting IRCA's substantive eligibility criteria, except on appeal from an order of deportation." Id. at 1113. Thus, the district court lacked jurisdiction over these claims. Further, "the fact that this is a class action does not change the ripeness analysis: individual plaintiffs whose claims are ripe by virtue of INS denials of their legalization applications may not avoid the holding in CSS merely by joining in a class-action challenge to nationwide INS 'practices.' " Id. at 1114. The aliens in the present action must seek redress through the limited administrative review scheme of the Reform Act and then, if they are ordered deported, they may appeal directly to this Court and challenge the INS's interpretation. Until that time, we are without jurisdiction.
 
 
 21
 Although the district court did not have jurisdiction to order the INS to change its interpretation of 8 U.S.C. Sec. 1255a(g)(2)(B)(i), the district court did have jurisdiction to adjudicate any disputes regarding INS procedures. As we stated in Naranjo-Aguilera, "district courts have jurisdiction over 'collateral,' 'procedural' challenges to INS practices in the processing of applications, such as the front-desking in CSS or the denial of interpreters in McNary. " Naranjo-Aguilera, 30 F.3d at 1113.
 
 
 22
 In the present case, several such procedural challenges may exist. For example, the aliens challenge the INS's procedures for accepting waivers. The plaintiffs contend that the INS refuses to accept and adjudicate waiver applications regarding deportations. This practice is analogous to the front-desking discussed in Catholic Social Services. The district court has jurisdiction in this area because the aliens have no way to challenge the failure to grant a waiver because no record of the waiver is ever created. See Catholic Social Services, 113 S.Ct. at 2498-99. Other challenges, such as the INS's refusal to allow aliens access to their prior deportation file are also procedural in nature.[1] The district court entered an order changing both of these procedures.
 
 
 23
 As the district court's order is currently written, it is unclear as to the reasons for the order. If the district court ordered the changes to allow the aliens to present an adequate record for appeal, then the order was within the court's jurisdiction. If the order was issued solely to cause the INS to change its interpretation of 8 U.S.C. Sec. 1255a(g)(2)(B)(i), then the order is invalid.
 
 
 24
 We therefore remand this issue to the district court. If the district court determines that certain procedures of the INS prevent an alien from establishing a proper record for appeal under the review scheme established by 8 U.S.C. Sec. 1160(e), it has jurisdiction to enter orders to correct the problem. We decline to offer any opinions on the merits of such an order at this time.
 
 CONCLUSION
 
 25
 Because the district court lacked jurisdiction to entertain the aliens' challenges to INS interpretations of the substantive eligibility requirement of continuous unlawful residence, we reverse its order of summary judgment. We remand the order of summary judgment ordering changes in INS procedures for adjudication consistent with this opinion. We find it unnecessary to reach the cross-claims on class certification.
 
 
 26
 REVERSED AND REMANDED.
 
 
 
 *
 Janet Reno, who succeeded Richard Thornburgh as the United States Attorney, is substituted as appellant in this case. Fed.R.App.P. 43(c)(1)
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The plaintiffs have attempted to characterize the entire district court's order as procedural in nature. We reject that interpretation. When the district court ordered the INS to make determinations whether the applicant's departure was "caused by" a deportation order, the court was without jurisdiction. A challenge to INS substantive eligibility requirements can only occur within the framework of the Reform Act