Soraya F. FARES and Marie–thérèse H. Assa'ad–Faltas, M.D., M.P.H., Plaintiffs,

v.

U.S. IMMIGRATION AND NATURALIZATION SERVICE et al., Defendants.

No. 3:96CV540–P.

United States District Court, W.D. North Carolina, Charlotte Division.

Oct. 23, 1998.

Partial Judgment Ordered Oct. 27, 1998.

Soraya F. Fares, plaintiff pro se.

Karen Torstenson, Washington, DC, James Sullivan, Charlotte, NC, Leah Loebl, Washington, DC, for defendant.

## MEMORANDUM AND ORDER

ROBERT D. POTTER, Senior District Judge.

**THIS MATTER** is before the Court on "Defendants' Motion for Partial Vacatur of Stay of Proceedings" [document no. 35–1] and "Individual Defendants' Fed.R.Civ.P. 12(b)(1) and (b)(6) Motion to Dismiss Complaint in Part" [document no. 35–2], both of which were filed on 17 August 1998. On 9 September 1998, Plaintiffs filed three pleadings: a "Response to Defendants' Motion to Vacate the Stay" [document no. 36]; a "Motion for Leave to Supplement their Opposition to the Immunity Defense Suggested by Individual Defendants" [document no. 37]; and a *"Preliminary* Opposition to the Immunity Defenses that *Might Be Deemed* to Have Been Raised by Some Defendants" [document no. 41]. On 21 September 1998, Defendants filed a "Response to Plaintiffs' September 9, 1998, Pleadings" [document no. 38]. On 28 September 1998, Plaintiffs filed a "Reply to 'Defendants' Response to Plaintiffs' September 9, 1998, Pleadings" [document no. 40].

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This case is notable for its labyrinthine file history. Plaintiff Soraya F. Fares is a United States citizen. Her daughter, Plaintiff Marie–Thérèse H. Assa'ad–Faltas, a citizen of Egypt, entered the United States in 1979 on a visa that allowed her to study for a graduate medical degree on the condition that she return to Egypt for a two-year "homestay" upon completion of her program. Her visa expired in May 1982, but she did not depart, even though the INS sent her a letter requiring her to do so. Faltas briefly left the country in 1983. She then returned on a temporary, six-month visitor's visa but remained in the country well beyond that limit. In 1988, she applied for amnesty and

legalization and, in a separate proceeding, applied to adjust her status to lawful permanent resident. Her applications were denied, as were her subsequent appeals and subsequent applications, because she failed to fulfill her homestay requirement and she engaged in unlawful employment.

The INS eventually instituted exclusion proceedings, and while such proceedings were pending, Plaintiffs filed several suits in federal court pertaining to Faltas' disputes with the INS, as well as disputes with Faltas' former employer. In particular, Plaintiffs filed a complaint in the District of South Carolina against the INS and various named and unnamed INS employees, seeking declaratory and injunctive relief and money damages. *Fares v. INS*, No. CA–93–3303–3–17–B (D.S.C.). This action was dismissed for lack of standing to bring claims under the Privacy Act, 5 U.S.C. § 552a, and for lack of subject matter jurisdiction because Faltas had failed to exhaust her administrative remedies. *Id.* (order filed 2 March 1994). The Fourth Circuit affirmed the decision, and the United States Supreme Court denied certiorari. *Fares v. INS*, 50 F.3d 6 (4th Cir.1995), *cert. denied*, 106 U.S. 1076, 116 S.Ct. 782, 133 L.Ed.2d 733 (1996).

On 19 January 1996, three days after the denial of certiorari, Plaintiffs filed yet another complaint against the INS and several INS employees in the District of South Carolina, again requesting damages and declaratory and injunctive relief. This complaint, arising from the same nucleus of facts, alleged, *inter alia*, causes of action under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), for allegedly searching and seizing Plaintiffs' papers and illegally denying Faltas her immigration benefits. On 27 September 1996, upon Plaintiffs' request, the District of South Carolina entered an order for voluntary dismissal of the complaint, without prejudice, pursuant to Rule 41(a) of the Federal Rules of Civil Procedure.

Plaintiffs then refiled their complaint in this Court on 17 December 1996. On 28 April 1997, the Court stayed this action [document no. 28] pursuant to Rule 41(d) of the Federal Rules of Civil Procedure until Plaintiffs complied with certain pre-filing conditions imposed by the District of South Carolina. Plaintiffs were required to pay Defendants' costs from the litigation in the District of South Carolina before refiling the action. Plaintiffs still have not paid those costs.

Defendants now seek to partially vacate the stay for the limited purpose of dismissing the claims against the individually named Defendants—Donald Young, Charlotte INS Office Director, Charlie Cross and Angela Di Neuno, INS employees; and Terry Bird, Dan Pelletier, and Keith Hunsucker, counsel for the INS Atlanta District (collectively referred to as "Individual Defendants").

## II. DISCUSSION AND ANALYSIS

### A. Partial Vacatur of the Stay

■ A district court has discretion to vacate a stay of proceedings in whole or in part. *See, e.g., Planned Parenthood v. Miller*, 860 F.Supp. 1409, 1411, 1421 (D.S.D.1994) (granting motion to partially vacate stay), *aff'd*, 63 F.3d 1452 (1995), *cert. denied sub. nom. Janklow v. Planned Parenthood*, 517 U.S. 1174, 116 S.Ct. 1582, 134 L.Ed.2d 679 (1996); *Henry v. Gross*, No. 84 Civ. 8399(TPG), 1985 WL 3947, at * 1 (S.D.N.Y.1985) (same). Given the well-established goal of terminating meritless *Bivens* claims "at the earliest possible stage in litigation," *Anderson v. Creighton*, 483 U.S. 635, 646 n. 6, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), the Court will grant Defendants' motion for partial vacatur of the stay of proceedings for the limited purpose of determining whether Plaintiffs have stated a claim upon which relief can be granted and whether the Court has subject matter jurisdiction to rule on certain claims.

### B. Individual Defendants' Motion to Dismiss *Bivens* Claims

#### 1. Failure to State a Claim

Individual Defendants move that the Court dismiss Plaintiffs' *Bivens* claims based upon a failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). Dismissal for failure to state a claim is proper

where it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Randall v. United States,* 95 F.3d 339, 343 (4th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1085, 137 L.Ed.2d 219 (1997). Plaintiffs must "put forward specific, nonconclusory factual allegations" when asserting claims under *Bivens* against federal officials. *Crawford–El v. Britton,* 523 U.S. 574, —— – ——, 118 S.Ct. 1584, 1596–97, 140 L.Ed.2d 759 (1998), *Dunbar Corp. v. Lindsey,* 905 F.2d 754, 764 (4th Cir.1990); *Lartey v. U.S. Dep't of Justice,* 790 F.Supp. 130, 133 (W.D.La.1992), *Baird v. Haith,* 724 F.Supp. 367, 372 (D.Md.1988). "Unless the *Bivens* complaint states a compensable claim for relief under the Federal Constitution, it should not survive a motion to dismiss." *Butz v. Economou,* 438 U.S. 478, 507–08, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978).

■ Plaintiffs' complaint fails to set forth specific factual allegations that the defendants violated clearly established constitutional rights. First, Plaintiffs allege that Individual Defendants released Fares' INS files to third parties involved in a since-settled civil suit brought by Faltas. This allegation invokes remedies under the Privacy Act, 5 U.S.C.A. § 552a(g), not *Bivens. See Fares,* 50 F.3d at 6, 1995 WL 115809. Furthermore, a Privacy Act claim precludes a *Bivens* action for damages. *Sullivan v. United States Postal Serv.,* 944 F.Supp. 191, 195 (W.D.N.Y.1996). Although the Privacy Act provides remedies against an offending agency, it provides no remedies against individual officials. *Williams v. Department of Veteran Affairs,* 879 F.Supp. 578, 586–87 (E.D.Va.1995). Thus, this allegation raises no compensable claim against Individual Defendants.

■ Second, Plaintiffs allege that Individual Defendants have tampered with Faltas' applications for adjustment of status. This allegation is unavailing because an unadmitted alien has no constitutionally protected right to the approval of an adjustment application. *Rahman v. McElroy,* 884 F.Supp. 782, 786 (S.D.N.Y.1995); *see Landon v. Plasencia,* 459 U.S. 21, 32, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982) (holding that an unadmit-

ted alien has no constitutionally protected interest in remaining in the United States).

■ Third, with regard to Defendants Young, Cross, and Di Neuno, Plaintiffs allege that these individuals, in instituting exclusion proceedings, presented false documents to an immigration judge. This allegation fails because there are no constitutional rights at stake in the conduct of exclusion proceedings. *Landon,* 459 U.S. at 32, 103 S.Ct. 321; *Adras v. Nelson,* 917 F.2d at 1552, 1559–60 (11th Cir.1990). Additionally, as discussed below, the decision to institute exclusion proceedings is shielded from civil liability by the qualified immunity doctrine.

Finally, Plaintiffs allege that Individual Defendants engaged in improper ex parte communications with an immigration judge and with the Board of Immigration Appeals. In particular, Plaintiffs claim that Defendants Bird and Hunsucker uttered "derogatory falsehoods" about Faltas to the immigration judge. Again, this allegation fails because there are no constitutional rights at stake in the conduct of exclusion proceedings, and Individual Defendants' conduct in exclusion proceedings is shielded by immunity. *Landon,* 459 U.S. at 32, 103 S.Ct. 321; *Adras,* 917 F.2d at 1559–60.

The Court discerns no other specific allegations from Plaintiffs' scattershot complaint, and any generalized allegations not addressed herein by the Court are deemed too vague for a *Bivens* action.

### 2. Absolute Immunity

■ The doctrine of absolute immunity recognizes that the special functions of some government officials require a full exemption from damages liability. *Butz,* 438 U.S. at 508, 98 S.Ct. 2894. In addition to judges and witnesses, absolute immunity is extended to government officials performing certain functions analogous to those of a prosecutor, regardless of whether those duties are performed in the course of civil, criminal, or agency proceedings. *Id.* at 508, 515, 98 S.Ct. 2894; *Schrob v. Catterson,* 948 F.2d 1402, 1411 (3d Cir.1991); *Fry v. Melaragno,* 939 F.2d 832, 837 (9th Cir.1991). Such immunity is necessary to protect these officials from

the risk of intimidation and harassment that would result from lawsuits challenging decisions to move forward with proceedings. *Butz,* 438 U.S. at 516, 98 S.Ct. 2894.

Here, Defendants Bird, Pelletier, and Hunsucker—all of whom serve as counsel for the INS—assert that their roles as government attorneys afford them absolutely immunity to Plaintiffs' *Bivens* claims. Plaintiffs counter that because deportation proceedings are civil in nature, prosecutorial immunity does not apply to INS attorneys. This argument is clearly unavailing. As noted above, the doctrine of absolute immunity is not limited to prosecutors or to the criminal setting.

Plaintiffs opine that the alleged ex parte communications by the INS attorneys were extra-judicial and, thus, outside the protection of *Burns.* This argument is likewise unavailing. Courts have granted absolute immunity despite claims of ex parte communications with judges, including administrative law judges. *See, e.g., Rudow v. City of New York,* 642 F.Supp. 1456, 1460–63 (S.D.N.Y.1986), *aff'd,* 822 F.2d 324 (2d Cir. 1987); *Barrett v. United States,* 622 F.Supp. 574, 589 (S.D.N.Y.1985), *aff'd,* 798 F.2d 565 (2d Cir.1986). What is more, courts have found prosecutors and analogous attorneys immune from liability for claims of making false or defamatory statements in judicial proceedings, as well as for claims of eliciting false and defamatory testimony from witnesses. *See, e.g., Burns v. Reed,* 500 U.S. 478, 489–92, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991); *Lyles v. Sparks,* 79 F.3d 372, 377 (4th Cir.1996). These holdings were based on the sound public policy that imposing liability in such circumstances would place unique and intolerable burdens upon prosecutors. *See generally Imbler v. Pachtman,* 424 U.S. 409, 424–26, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). In *Imbler,* the United States Supreme Court observed:

> A prosecutor is duty bound to exercise his best judgment both in deciding which suits to bring and in conducting them in court. The public trust of the prosecutor's office would suffer if he were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages. Such suits could be

expected with some frequency, for a defendant often will transform his resentment at being prosecuted into the ascription of improper and malicious actions to the State's advocate.

*Id.* at 424–25, 96 S.Ct. 984 (citations omitted). It follows that Plaintiff's claims against the INS attorneys should be dismissed.

Finally, there are procedural safeguards available in exclusion proceedings that weigh in favor of according absolute immunity to INS attorneys from suits arising in connection with those proceedings. *See Butz,* 438 U.S. at 512–17, 98 S.Ct. 2894 (describing procedural safeguards in federal administrative proceedings); *see also Xiao v. Barr,* 979 F.2d 151, 155 (9th Cir.1992) (observing that the immigration judge has authority to terminate exclusion proceedings by subjecting the decision to commence such proceedings to scrutiny); *Rafeedie v. INS,* 880 F.2d 506, 507–08 (D.C.Cir.1989) (observing that exclusion proceedings are conducted by an immigration judge, a trier of fact independent of the INS, and that an alien may present her own evidence and challenge evidence presented by the INS).

The Court finds that Individual Defendants Bird, Pelletier, and Hunsucker are absolutely immune from Plaintiffs's claims. Accordingly, the claims against these individuals are dismissed.

### 3. Qualified Immunity

█ Individual Defendants argue that, at the very least, they are all shielded from Plaintiffs' *Bivens* claims by qualified immunity. The doctrine of qualified immunity holds that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Crawford–El,* 523 U.S. at ——, 118 S.Ct. at 1592 (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). This doctrine applies to INS officers. *Adras,* 917 F.2d at 1558–59; *Lartey,* 790 F.Supp. at 133.

Like absolute immunity, qualified immunity is intended to protect government officials from the burdens and significant costs of unnecessary litigation. *Behrens v. Pelletier,* 516 U.S. 299, 308, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996). As stated by the United States Supreme Court:

> This official immunity apparently rested, in its genesis, on two mutually dependent rationales: (1) the injustice, particularly in the absence of bad faith, of subjecting to liability an officer who is required, by the legal obligations of his position, to exercise discretion; (2) the danger that the threat of such liability would deter his willingness to execute his office with the decisiveness and the judgment required by the public good.

*Scheuer v. Rhodes,* 416 U.S. 232, 239–40, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (footnote omitted).

■ Plaintiffs fail to assert a violation of any clearly established constitutional or statutory rights. A clearly established right is one so thoroughly developed and consistently recognized under the law as to be indisputable and unquestioned. *See Springmen v. Williams,* 122 F.3d 211, 214 (4th Cir.1997) ("Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." (quoting *Maciariello v. Sumner,* 973 F.2d 295, 298 (4th Cir.1992))). An unadmitted or "excludable" alien has no constitutionally protected right to the approval of an adjustment application, *Rahman,* 884 F.Supp. at 786, nor are there any constitutional rights at stake in the conduct of exclusion proceedings. *Landon,* 459 U.S. at 32, 103 S.Ct. 321; *Adras,* 917 F.2d at 1559–60. While Plaintiffs claim that the actions of Individual Defendants have denied them their rights to be united as a family, this alleged right is not established, let alone "clearly established." *See Singh v. Magee,* No. 97–15403, 1998 WL 388507, at *8–9 (9th Cir. July 14, 1998); *Noel v. Chapman,* 508 F.2d 1023, 1027 (2d Cir.1975). Thus, Individual Defendants are entitled to qualified immunity.

### 4. Lack of Subject Matter Jurisdiction

■ Individual Defendants alternatively move that the Court dismiss Plaintiffs' Bivens claims based upon a lack of subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1). Specifically, Individual Defendants assert that Plaintiffs have not yet exhausted their administrative remedies, and, therefore, the claims are not ripe.

The doctrine of exhaustion of administrative remedies is a matter of judicial discretion and is used to govern the timing of federal-court decisionmaking. *Patsy v. Board of Regents of Florida,* 457 U.S. 496, 501, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). Of course, in fashioning of exhaustion principles, courts must give appropriate deference to congressional intent and any applicable statutory scheme. *Id.* at 501–02 & n. 4, 102 S.Ct. 2557. While there is certainly a procedure in place for appealing decisions in immigration matters, it appears that Congress has never specifically legislated that an alien must exhaust this administrative scheme prior to filing a *Bivens* action. Still, many federal courts have applied the exhaustion requirement to *Bivens* claims, even where administrative remedies do not provide for money damages. *See, e.g., Gibbs v. Bureau of Prison Office,* 986 F.Supp. 941, 944 (D.Md. 1997) (and cases cited therein).

The exhaustion doctrine acknowledges the commonsense notion of dispute resolution that an agency should have the opportunity to correct its own mistakes before being haled into federal court. *McKart v. United States,* 395 U.S. 185, 195, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969). In addition, even when a controversy survives administrative review, exhaustion of the administrative procedure may produce a useful record for subsequent judicial review. *Weinberger v. Salfi,* 422 U.S. 749, 765, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975).

As the parties indicate in their briefs, the exclusion proceedings involving Faltas have not yet reached a final decision. The alleged conduct of Individual Defendants, therefore, still may be subject to scrutiny. *See Xiao,* 979 F.2d at 155 (observing that the immigration judge has authority to terminate exclusion proceedings by subjecting the decision to commence such proceedings to scrutiny). The Court finds no undue prejudice in re-

quiring Plaintiffs to exhaust their administrative remedies prior to bringing a *Bivens* claim related to the conduct of Individual Defendants during the course of exclusion proceedings. Thus, to the extent that Plaintiffs' *Bivens* claims relate to the conduct of Individual Defendants during the course of exclusion proceedings, the Court dismisses those claims for lack of subject matter jurisdiction.

## C. Plaintiffs' Motion for Leave to Conduct Discovery

 Insofar as Plaintiffs' "Motion for Leave to Supplement their Opposition to the Immunity Defense Suggested by Individual Defendants" is a request to conduct discovery before the Court decides whether Plaintiffs' claims should be dismissed on grounds of immunity, that request is denied. As noted above, the Court will dismiss the claims against Individual Defendants precisely to prevent subjecting those individuals to unnecessary and burdensome discovery or trial proceedings. As stated by the U.S. Supreme Court in *Crawford–El,* 523 U.S. at ——, 118 S.Ct. at 1597: "[T]he district court should resolve that threshold [immunity] question before permitting discovery." Therefore, Plaintiffs' request to conduct such discovery is denied. In issuing this decision, however, the Court has considered the opposition and reply brief and other papers submitted by Plaintiffs.[1]

NOW, **THEREFORE, IT IS ORDERED** that "Defendants' Motion for Partial Vacatur of Stay of Proceedings" [document no. 35–1] be, and hereby is, **GRANTED.**

**IT IS FURTHER ORDERED** that "Individual Defendants' Fed.R.Civ.P. 12(b)(1) and (b)(6) Motion to Dismiss Complaint in Part" [document no. 35–2] be, and hereby is, **GRANTED.**

**IT IS FURTHER ORDERED** that "Plaintiffs' Motion for Leave to Supplement their Opposition to the Immunity Defense Suggested by Individual Defendants" [document no. 37] be, and hereby is, **DENIED.**

### PARTIAL JUDGMENT

In accordance with the Memorandum and Order filed 23 October 1998, **IT IS ORDERED, ADJUDGED, AND DECIDED** that Plaintiffs' claims against the named and unnamed Individual Defendants in the above-captioned matter be, and hereby are, **DISMISSED WITH PREJUDICE.**

---

1. While Plaintiffs noted in their motion for leave that they did not receive a *Roseboro* order, such an order is clearly unnecessary under the circumstances. In *Roseboro v. Garrison,* 528 F.2d 309 (4th Cir.1975), the Fourth Circuit held that pro se litigants should be notified of their right to respond to dispositive motions. *Roseboro* was concerned with the possibility that a pro se litigant in the circumstances of that case might not understand that he was entitled to file an opposition to a motion for summary judgment, and, therefore, that pro se litigant should be alerted to the consequences of failing to respond. *See* *Hummer v. Dalton,* 657 F.2d 621, 624 (4th Cir. 1981) (affirming summary judgment despite *Roseboro* challenge). There are no such concerns in the present case. First, Plaintiffs fully responded to Defendants' motion. Second, Plaintiffs are experienced and prolific pro se litigants—having filed several actions in federal court and having been subjected to previous motions to dismiss—and, therefore, are well aware of their right to respond. The fact that Plaintiffs recognized their *Roseboro* rights, while at the same time filing an opposition to the motion to dismiss, is telling in itself.